UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador PARRA, also known as Salvador Ledezma, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Alfredo SOTELO, also known as Ricardo Duarte, Defendant–Appellant.

Nos. 92–2053, 92–2055.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1993.

---

Albert B. Lassen, of Lassen & Jaffe, Albuquerque, NM, for defendant-appellant Salvador Parra.

Frederick Jones, Jr., Albuquerque, NM, for defendant-appellant Jose Alfredo Sotelo.

Tara C. Neda (Don J. Svet, U.S. Atty., with her on the briefs), Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee.

Before ANDERSON, HOLLOWAY, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

In separate appeals,[1] defendants Jose Alfredo Sotelo and Salvador Parra challenge their convictions and sentences for violating various drug and weapons laws. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

A grand jury charged the defendants in a seven-count indictment. The first four counts charged Sotelo and Parra, along with their codefendant Francisco Castillo: Count I charged possession with intent to distribute less than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count II charged conspiracy to commit the offense charged in Count I in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; Count III charged use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c)(1); and Count IV charged use of the same firearm during and in relation to a conspiracy to commit a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c)(1). Count V charged Sotelo alone with use of a second firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c)(1). Finally, Counts VI and VII charged Sotelo alone with being an illegal alien in possession of each of the two firearms identified in Counts III and V in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). A jury convicted Mr. Parra on the first five counts and Mr. Sotelo on all seven counts. The court then sentenced Mr. Parra to a total of 346 months and Mr. Sotelo to a total of 341 months of imprisonment. These terms each included 240 months for the convictions on Count IV to be served consecutively to the sentences imposed for the convictions on the other counts.

The defendants appeal their convictions on all counts and the sentences imposed for their convictions on Count IV. Mr. Sotelo argues that the district court erred when it (1) denied his motion to sever Counts VI and VII, (2) denied his motion to suppress physical evidence, (3) denied his motion to suppress statements concerning his identity, (4) admitted prejudicial coconspirator statements, (5) entered judgment where there was insufficient evidence to support the convictions, (6) entered judgment on two convictions of use of a firearm during the same drug crime in violation of the Double Jeopardy Clause, and (7) misapplied the United States Sentencing Guidelines. Mr. Parra argues only that the district court improperly denied his motion to suppress physical evidence and misapplied the Sentencing Guidelines. We address the defendants' arguments in turn.

## I. MOTION TO SEVER COUNTS

■ Mr. Sotelo contends that the district court should have severed counts VI and VII, which charged him with being an illegal alien in possession of a firearm. He argues that he was prejudiced because the jury might have improperly presumed that his only purpose for being in the country illegally was to traffic drugs. In deciding a motion for severance,

the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials.

"The decision whether to grant or deny severance is in the sound discretion of the trial court, and will not be disturbed on appeal unless there is an affirmative showing of abuse of discretion." "The burden of the defendant to show an abuse of discretion in this context is a difficult one."

*United States v. Hollis,* 971 F.2d 1441, 1456 (10th Cir.1992) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). We conclude that the district court did not abuse its discretion because Sotelo has failed to demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials.

---

**1.** Although these appeals are not consolidated, we address the defendants' common arguments in a single opinion.

## II. MOTIONS TO SUPPRESS PHYSICAL EVIDENCE

Both defendants argue that the district court erred when it denied their motions to suppress cocaine and a firearm found during a warrantless search of their motel room. The court held that exigent circumstances justified the warrantless entry of the room and arrest of the defendants. It held further that the evidence was discovered during a legal protective sweep of the room. We review the district court's factual findings under the clearly erroneous standard and view the evidence in the light most favorable to the district court's findings. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992). The ultimate determination regarding the reasonableness of the search is a question of law which we review de novo. *Id.* After reviewing the district court's decision, we affirm.

Viewed in the light most favorable to the government, the evidence adduced at the suppression hearing presents the following set of facts. On May 14, 1991, a confidential informant ("CI") informed narcotics detectives from the Albuquerque Police Department ("APD") that Francisco Castillo was staying in Room 132 of the Freeway Motor Inn with several other men and that cocaine was being sold from the room. The CI also told the detectives that one of the men acted as a bodyguard for Castillo, was armed and dangerous, and drove a blue Buick.

At this point, the detectives believed that they did not have probable cause to obtain a warrant to search the defendants' motel room. They therefore established surveillance of the room in order to have the CI confirm that cocaine was actually in the room. The plan was then to use this information to obtain a search warrant to arrest the suspects and seize the cocaine. They estimated that it would take about one hour to obtain the warrant.

While the detectives watched from their vantage point in room 152, they observed Parra and Castillo enter room 132. A short time later, Mr. Sotelo, who matched the CI's description of Castillo's bodyguard, arrived in a blue Buick with a black vinyl top. After Sotelo entered the room, Parra left the room, retrieved from the Buick a brown paper bag, and re-entered the room. The detectives believed the bag contained cocaine.

Soon after, Castillo left the room, made a phone call from the motel lobby, and returned to the room. An APD detective who was at another location with the CI informed the detectives in room 152 that Castillo had paged the CI to have him view the cocaine. Within a few minutes, the CI entered room 132. After less than a minute, he left the room and gave a prearranged signal indicating that he had seen the cocaine.

Almost immediately, Castillo left the room carrying a brown paper bag. As he walked toward the motel office, he placed the bag into a nearby trash can. The detectives believed that this was the same bag they had observed earlier, and they feared that destruction or movement of the cocaine was occurring or was imminent and that the suspects were preparing to flee. They therefore decided to arrest Castillo in the office area. During the arrest, the door to room 132 was open four to six inches and the detectives believed that the other suspects might have observed Castillo's arrest. They therefore decided to secure room 132 without first obtaining a warrant.

Three detectives went to room 132 and confronted Sotelo and Parra. Although they instructed the suspects in both English and Spanish to raise their arms above their heads, the men did not comply immediately. Mr. Sotelo, who appeared calm, glanced directly at a pillow placed in the center of the bed closest to him, but did not move toward the pillow. After the suspects raised their arms, two of the detectives subdued and handcuffed them. At the same time, the third officer lifted the pillow on the bed closest to Sotelo and discovered a semi-automatic pistol. After the suspects were seated on the ground with their hands cuffed behind their backs, another detective removed another pillow lying at the center of the second bed and discovered a clear baggie of cocaine.

The suspects were detained while one of the detectives obtained a warrant to search the rest of the room and the Buick. After obtaining the warrant, the detectives discov-

ered a .357 magnum revolver in the car under the driver's seat.

■ Defendants first contend that the initial warrantless entry of their motel room was illegal. Absent consent or exigent circumstances, police may not enter a citizen's home without a warrant. *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); *United States v. Mendoza–Salgado,* 964 F.2d 993, 1010 (10th Cir.1992). A guest in a motel room is similarly protected from warrantless entries. *See Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *United States v. Owens,* 782 F.2d 146, 149 (10th Cir.1986). In *United States v. Aquino,* 836 F.2d 1268 (10th Cir.1988), we articulated four requirements for a permissible warrantless entry:

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of [a] ... suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

*Id.* at 1272. The government bears the burden of proving exigency. *United States v. Maez,* 872 F.2d 1444, 1452 (10th Cir.1989). In assessing whether this burden was met, we " 'evaluate the circumstances as they would have appeared to prudent, cautious and trained officers.' " *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983) (quoting *United States v. Erb,* 596 F.2d 412, 419 (10th Cir.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979)). Our determination " 'ultimately depends on the unique facts of each controversy.' " *United States v.*

*Justice,* 835 F.2d 1310, 1312 (10th Cir.1987) (quoting *United States v. Jones,* 635 F.2d 1357, 1361 (8th Cir.1980)), *cert. denied,* 487 U.S. 1238 (1988).

■ We conclude that the government met its burden of demonstrating that exigent circumstances justified the warrantless entry of the defendants' motel room.[2] The officers believed that Castillo was disposing of evidence and that he might be preparing to flee. After they secured Castillo, they believed that the other suspects might have observed them from the partially open door and might therefore begin destroying evidence. From the perspective of "prudent, cautious and trained officers," these beliefs were reasonable. *See Aquino,* 836 F.2d at 1273 (fact that news of accomplice's arrest could reach suspects justified belief that suspects might destroy evidence); *Cuaron,* 700 F.2d at 587 (fact that apprehended accomplice would not return from short trip justified belief that suspects might destroy evidence). "When officers have reason to believe that criminal evidence may be destroyed or removed before a warrant can be obtained, the circumstances are considered sufficiently critical to permit" a warrantless entry. *Cuaron,* 700 F.2d at 586.

■ The defendants contend that, even if these circumstances justified the warrantless entry, the district court erred in not finding that the circumstances were the product of police manipulation or abuse. They contend that the detectives could have obtained a warrant before establishing surveillance and that their failure to seek a warrant demonstrates that the officers' plan was to wait for exigent circumstances to arise during the course of their surveillance. Parra cites the trial testimony of one of the arresting officers as evidence that the officers planned all along to arrest the defendants as soon as the CI gave the prearranged signal.[3]

---

2. The defendants do not contest that the government met the other three *Aquino* requirements.

3. The detective in charge of the operation testified on direct examination as follows:
 Q: Now, what was the plan that you had devised regarding [the CI]?
 A: [The CI] was to go to the motel room and was going to see if the cocaine was actually

there, and, if in fact[ ] the cocaine was there, he was going to tell these people that he had to go get the money. It was right around the corner; that he would be right back, and when he left the room he was going to give us a signal indicating that the stuff was there.
 Q: What was the signal?

We conclude that the court's failure to find that the detectives manipulated or abused the circumstances of this case was not clearly erroneous. The detectives testified at the suppression hearing that they believed that they had insufficient evidence to obtain a warrant before the CI confirmed that cocaine was in the room. They further testified that they planned to obtain a warrant after the CI confirmed there was cocaine in the room, but that their plan was interrupted by the circumstances discussed above. Because the district court is in the best position to make credibility determinations, we cannot say that we have a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

 As for the trial testimony cited by Parra, we decline to consider it here. We have stated often the general rule that "[i]n evaluating the correctness of the district court's rulings, the appellate court may consider the entire record developed from the trial even though such evidence may not have been presented during the suppression hearing." *United States v. Corral,* 970 F.2d 719, 723 (10th Cir.1992). In practice, however, we have applied the rule only in cases in which the trial evidence *supported* the district court's earlier ruling at the suppression hearing. *See, e.g., id.* This practice is consistent with the practice in other circuits; the Sixth, Seventh, and District of Columbia Circuits have expressly limited consideration of trial evidence to that which supports the district court's decision. *United States v. Thomas,* 875 F.2d 559, 562 n. 2 (6th Cir.), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989); *United States v. Longmire,* 761 F.2d 411, 418, 420–21 (7th Cir. 1985); *United States v. Hicks,* 978 F.2d 722, 724–25 (D.C.Cir.1992); *see also* 4 Wayne R. LaFave, *Search and Seizure* § 11.7(c), at 520–21 (2d ed. 1987). Those courts have reasoned that the district court should have

the first opportunity to correct its mistake. *See, e.g., Thomas,* 875 F.2d at 562 n. 2; *Longmire,* 761 F.2d at 421. As the District of Columbia Circuit stated,

> [d]efense counsel, as well as prosecutors, are required to bring alleged errors to the trial court's attention by making a proper objection or filing a motion. Trial courts are not generally bound to act *sua sponte.* The burden should not be on the court constantly to compare the evidence at trial with that from the earlier hearing. The parties thus have an incentive to make their objections known at the trial stage where corrections can be made without having to redo the entire proceeding.

*Hicks,* 978 F.2d at 725. We concur in this reasoning and today hold that, unless a party asks the district court to reconsider its decision at trial, *see, e.g., United States v. De Jesus–Rios,* 990 F.2d 672, 675 n. 2 (1st Cir. 1993), we will not consider trial evidence which undermines a district court decision rendered at a pretrial suppression hearing. Of course, if the trial evidence is of such a nature that the district court should have immediately realized that its earlier ruling was in error, we may consider the evidence because the district court's failure to act *sua sponte* would then be plain error. *See Longmire,* 761 F.2d at 421 n. 5; *see also United States v. Perez,* 989 F.2d 1574, 1583 (10th Cir.1993) ("To constitute plain error ... the *constitutional* error must be (1) obvious, and (2) 'affect[ ] substantial rights.' ") (emphasis in original). In this case, Parra did not renew his suppression motion at trial, and we cannot say that the court's failure to *sua sponte* revisit its decision was plain error. We therefore conclude that the initial warrantless entry was justified.

 Sotelo next argues that even if the initial entry was justified, the subsequent search under the two pillows placed on the beds went beyond the scope of a proper protective sweep. Although we agree that this search cannot be justified as a protective sweep, we affirm on the basis that the search was a proper search incident to arrest.

A: The signal was the removing of his baseball cap.
Q: And after the signal, what was the plan?

A: The plan at that time was to secure the room.

■ In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that police officers, subsequent to a lawful arrest, may search the person of an arrestee and any area in her immediate control without a search warrant to protect them from danger and prevent the destruction of evidence. *Id.* at 762–63, 89 S.Ct. at 2039–40.[4] Sotelo argues that, because the defendants were subdued and handcuffed at the time the officers searched under the pillows, the search went beyond a lawful search incident to an arrest.

We disagree. As to the search under the first pillow, the evidence shows that the pillow was removed at the same time the officers were cuffing the suspects. At that time, there remained a strong possibility that Sotelo could break free and retrieve whatever was hidden under the pillow. Because the CI had informed the officers that Sotelo was armed and dangerous, and because Sotelo had glanced calmly down at the pillow when ordered to raise his hands, the officers were justified in sweeping the pillow away on the chance that there was a gun hidden there.

■ In determining whether the search under the second pillow was also justified as a search incident to arrest, the fact that the defendants were handcuffed by the time the second pillow was removed is only one of the factors to be considered. The question whether an area searched is within the arrestee's immediate control also depends on a number of other factors, such as the relative numbers of officers and arrestees on the scene, the relative positions of the arrestees and officers vis-a-vis the place to be searched, and the ease or difficulty the arrestee will encounter in attempting to gain access to the searched area. 1 Wayne R. LaFave & Jerold R. Israel, *Criminal Procedure* § 3.6(c), at 265–66 (1984); *see also United State v. Lucas*, 898 F.2d 606, 609–10 (8th Cir.) (employing "totality of circumstances

approach" to case involving handcuffed arrestee), *cert. denied*, 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). Moreover, in determining whether an officer has correctly gauged the chances of an arrestee reaching hidden weapons or evidence, we must remember that

> [c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp. Thus, searches have sometimes been upheld even when hindsight might suggest that the likelihood of the defendant reaching the area in question was slight.

*United States v. Lyons*, 706 F.2d 321, 330 (D.C.Cir.1983).

After reviewing the circumstances of this case, we conclude that the search under the second pillow was also justified as a search incident to arrest. Although the two defendants were handcuffed and seated at the precise time of the search, other facts support our conclusion that a reasonable officer on the scene could believe that the area under the second pillow was within their control. Both defendants were seated next to the bed, and none of the three officers were positioned between the defendants and the pillow. The pillow itself could have been swept away easily. Most importantly, the search occurred immediately after the officers had discovered a loaded weapon within Sotelo's grasp. Because the officers reasonably believed that Sotelo had already indicated a desire to reach the weapon found under the first pillow, they made an on-the-spot decision to search under a similarly positioned pillow. "*Chimel* does not require the police to presume that an arrestee is wholly rational. Persons under stress may attempt actions which are unlikely to succeed." *United States v. McConney*, 728 F.2d 1195, 1207 (9th Cir.) (en banc), *cert. denied*, 469

---

**4.** In contrast, a " 'protective sweep' is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others. It is *narrowly confined* to a cursory visual inspection of those places *in which a person might be hiding.*" *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990) (emphasis added); *see* *also id.* at 336, 110 S.Ct. at 1099 (distinguishing the "search incident to arrest" established in *Chimel* from a protective sweep). Because the government cannot plausibly argue that the detectives believed that dangerous accomplices might have been hiding under the bed pillows, we do not rely on the protective sweep doctrine.

U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Although hindsight suggests that Sotelo had little chance of reaching under the second pillow, we cannot say that the officers' decision was unjustified.[5] We therefore affirm the denial of the defendants' motions to suppress physical evidence.

### III. MOTION TO SUPPRESS ORAL STATEMENTS

Mr. Sotelo contends that the district court erred in denying his motion to suppress statements regarding his identity that he made during questioning by Agent Robert Godshall of the Immigration and Naturalization Service ("INS"). The district court held, and the government now argues, that the questioning fell within the "routine booking questions" exception to *Miranda*. We disagree with the district court, but conclude that its error was harmless.

Agent Godshall first questioned Sotelo shortly after his arrest at the motel room on May 14, 1991. At that time, Sotelo gave his name as Ricardo Duarte Antion. He also confessed to having entered the country illegally. After Sotelo was taken into state custody at the Bernalillo County Detention Center ("BCDC"), the INS placed a detainer on him so that when he was released, he would be released into federal custody.

While Sotelo was in state custody, Agent Godshall attempted to research the immigration history of Ricardo Duarte Antion. Unable to find any reference to a person of that name, Agent Godshall conducted further research and determined that Sotelo was Jose Sotelo Duarate and that he had been deported from the United States.

Upon being informed by officials at the BCDC on May 17, 1991 that Sotelo was about to post bond, Agent Godshall proceeded to the BCDC to take Sotelo into federal custody. At the BCDC, Agent Godshall encountered Sotelo in the booking area where Sotelo was attempting to recover his belongings in preparation for his release. Hoping to get Sotelo to admit his real name, Agent Godshall asked Sotelo, "How is it going, Jose?" After Sotelo responded affirmatively to that name, Agent Godshall said, "So that's your name, Jose. It's not Ricardo Duarte?" Sotelo admitted that Duarte was not his name. Agent Godshall testified that he engaged Sotelo in this conversation to get him to admit his true name. He further testified that information related to Sotelo's identity would help him determine whether Sotelo was in the country illegally.

■ Sotelo contends that this questioning at the BCDC was in violation of his *Miranda* rights. We agree. It is well established that a suspect may not be subjected to custodial interrogation in the absence of an attorney once that suspect has chosen to exercise her *Miranda* rights. See *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *United States v. Giles,* 967 F.2d 382, 385 (10th Cir.1992). Unless the suspect knowingly and intentionally waives those rights, the police must refrain from questioning the suspect outside the presence of her lawyer. *Edwards,* 451 U.S. at 482, 484–85, 101 S.Ct. at 1884–85; *Giles,* 967 F.2d at 385.

The government concedes that Agent Godshall subjected Sotelo to custodial questioning, but contends that the encounter falls within the exception for "routine booking questions." In *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), a plurality of the Court recognized the exception "which exempts from *Miranda's* coverage questions to secure the 'biographical data necessary to complete booking or pretrial services.'" *Id.* at 601–02, 110 S.Ct. at 2650–51 (quoting *United States v. Horton,* 873 F.2d 180, 181 n. 2 (8th Cir.1989)) (plurality of four justices). The government

---

**5.** Our decision in *United States v. Bonitz,* 826 F.2d 954 (10th Cir.1987), does not compel a different conclusion because the facts of that case are distinguishable. In *Bonitz,* the defendant was seated with his hands cuffed behind his back when at least four officers began a two-and-one-half hour systematic search of his bedroom. *Id.* at 955. We reversed the denial of Bonitz's motion to suppress a Colt AR–15 rifle located in a closed, hard plastic case underneath a workbench a few feet from where Bonitz was seated. *Id.* at 955–56. There was no evidence that Bonitz showed any inclination to retrieve the weapon. Moreover, doing so would have entailed substantially more effort than sweeping away a bed pillow.

argues that the questions regarding Sotelo's name fall squarely within this exception. We disagree.

The underlying rationale for the exception is that routine booking questions do not constitute interrogation because they do not normally elicit incriminating responses. *See United States v. Clark,* 982 F.2d 965, 968 (6th Cir.1993); *United States v. Monzon,* 869 F.2d 338, 342 (7th Cir.), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). As the *Muniz* plurality itself recognized, "the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." 496 U.S. at 602 n. 14, 110 S.Ct. at 2650 (internal quotations omitted). Thus, where questions regarding normally routine biographical information are designed to elicit incriminating information, the questioning constitutes interrogation subject to the strictures of *Miranda. See United States v. Henley,* 984 F.2d 1040, 1042 (9th Cir.1993). In this case, Agent Godshall did not question Sotelo to obtain general booking information. Rather, he questioned Sotelo about his true name for the direct and admitted purpose of linking Sotelo to his incriminating immigration file. Under these circumstances, the questioning was reasonably likely to elicit incriminating information relevant to establishing an essential element necessary for a conviction of being an illegal alien in possession of a firearm. *See United States v. Equihua–Juarez,* 851 F.2d 1222, 1227 (9th Cir.1988). We therefore conclude that the district court erred when it found that Agent Godshall did not interrogate Sotelo. Because the government concedes that Sotelo was in custody and had not waived his *Miranda* rights, we further conclude that the court erred in denying the motion to suppress Sotelo's oral statements regarding his identity.

Nevertheless, we affirm on the ground that the district court's error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (establishing harmlessness standard for constitutional errors). On appeal, Sotelo challenges

only the admission of Agent Godshall's testimony regarding his May 17 conversation with Sotelo. We can identify only two ways in which the admission of that testimony could have harmed Sotelo: (1) by helping to establish his identity; and (2) by helping to establish the fact that he used an alias. In either case, we conclude that there was no harm done. First, Sotelo's identity was never an issue during trial. The court and all counsel, including Sotelo's counsel, referred to him as Jose Sotelo throughout the trial. Moreover, three witnesses directly identified Sotelo as Jose Sotelo at trial. Agent Godshall himself testified that he recognized Sotelo as Jose Sotelo from an immigration file. Finally, the motel clerk identified a picture of Sotelo as one of the men he saw at the motel.

Second, to the extent that using an alias was relevant to Sotelo's conviction, the jury had overwhelming evidence, apart from the May 17 conversation, that Sotelo used an alias: two witnesses testified directly to that fact.[6] Because there was overwhelming evidence identifying Sotelo as the man named in the indictment and showing that he used an alias, we conclude that the district court's error was harmless beyond a reasonable doubt.

## IV. ADMISSION OF COCONSPIRATOR STATEMENTS

Mr. Sotelo challenges the admission of the CI's testimony regarding certain statements made by Castillo about Sotelo's role in the conspiracy. He contends that the court erred in concluding that the coconspirator exception to the hearsay rule applied and that the prejudicial effect of the statements did not outweigh their probative value. We review the admission of evidence for a an abuse of discretion, according heightened deference to the trial court's hearsay rulings. *See United States v. Zimmerman,* 943 F.2d 1204, 1211 (10th Cir.1991).

We apply a three-part test when reviewing the admission of coconspirator statements under Fed.R.Evid. 801(d)(2)(E). *See United States v. Nicholson,* 983 F.2d 983, 991

---

**6.** At trial, Mr. Sotelo objected to the admission of further evidence that Sotelo used an alias on the ground that it would be cumulative. The court sustained the objection on that ground.

(10th Cir.1993). The trial court must find "by a preponderance of the evidence that: 1) a conspiracy existed, 2) the declarant and the defendant against whom the declarations are offered were members of the conspiracy, and 3) the statements were made in the course of and in furtherance of the conspiracy." *United ed States v. Mobile Materials, Inc.*, 881 F.2d 866, 869 (10th Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). In making these findings, the court may examine both independent evidence and the hearsay statements themselves. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987); *United States v. Brown,* 943 F.2d 1246, 1254 (10th Cir.1991).

■ Prior to admitting the hearsay statements, the district court concluded that a conspiracy to traffic cocaine existed between Castillo and Sotelo and that Castillo's statements were made during the existence of the conspiracy. The court based its findings on the CI's testimony that he met Castillo and Sotelo together at a park, that Castillo arranged for the sale of cocaine to the CI in Sotelo's presence, that Castillo identified Sotelo as his bodyguard and a dangerous man, and that both Castillo and Sotelo were present in the motel when the CI went to view the cocaine. We conclude that the district court did not abuse its discretion.[7]

■ Sotelo also challenges these hearsay statements as more prejudicial than probative. Because he did not challenge the statements on that ground below, however, we review only for plain error. *See United States v. Hollis,* 971 F.2d 1441, 1454 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). "Plain error is *fundamental* error, something so basic, so prejudicial, so lacking in its ele-

ments that justice cannot have been done." *Id.* (internal quotations omitted). Before the jury, the CI testified that Castillo told him that Sotelo "is the one that we use whenever we need to kill anyone." Even if this statement was more prejudicial than probative, we cannot say that the district court plainly erred in not exercising its discretion to strike the testimony.

## V. SUFFICIENCY OF THE EVIDENCE

■ Mr. Sotelo contends that the government did not present sufficient evidence to sustain a jury verdict on any of the counts.[8] To review the sufficiency of the evidence supporting a criminal conviction, we examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). In applying this standard, we recognize that "[c]redibility choices are resolved in favor of the jury's verdict...." *United States v. Horn,* 946 F.2d 738, 741 (10th Cir.1991). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ We conclude that there was sufficient evidence to sustain the jury's verdict on all counts. As to Count I, the government was required to prove that Sotelo knowingly possessed the cocaine with intent to distribute. Possession may be actual or constructive and may be proved by circumstantial evidence. *See United States v. Hooks,* 780

---

**7.** Although the court did not expressly conclude that the statements were made *in furtherance* of the conspiracy, we find that the evidence amply supports that implicit conclusion.

**8.** Sotelo raises as a separate ground for appeal the improper denial of his "motion for dismissal of all counts and directed verdict on Counts I and II." We note that this does not state an independent ground for appeal. Rule 29 provides a motion for judgment of acquittal as the substitute for the former motions for a directed

verdict and for dismissal. *See* Fed.R.Crim.P. 29(a); *see also* Charles A. Wright, Federal Practice and Procedure § 461 (1982). A Rule 29 motion is the mechanism by which the defendant asks the trial court to review the sufficiency of the evidence. Thus, the presence of a Rule 29 motion merely *preserves* the sufficiency issue for our review. *See, e.g., United States v. Lopez,* 576 F.2d 840, 842 (10th Cir.1978). It does not provide any independent *ground* for appeal.

F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). As to Count II, the government was required to prove that Sotelo and at least one other person agreed to commit the crime charged in Count I, that Sotelo knew the essential elements of the conspiracy, and that he knowingly and voluntarily became a part of it. *See United States v. Morehead,* 959 F.2d 1489, 1499 (10th Cir.1992). "A defendant's participation in a conspiracy is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged co-conspirators." *Horn,* 946 F.2d at 740 (citations omitted).

■ At trial, the jury heard evidence that Castillo arranged for the sale to the CI in Sotelo's presence and that Castillo told the CI that Sotelo was in charge of the operation, acted as a bodyguard, and would kill anyone who needed to be killed. The officers saw Sotelo drive a blue Buick containing a brown paper bag to which a police dog trained to detect narcotics later alerted. Sotelo was present in the room when the CI arrived to view the cocaine. When the officers entered the room, Sotelo looked directly at the pillow hiding the semi-automatic pistol before raising his hands. Although much of the evidence against Sotelo was circumstantial, "a criminal conviction may be sustained on wholly circumstantial evidence." *Hooks,* 780 F.2d at 1529. We conclude that the evidence was sufficient to sustain Sotelo's convictions on Counts I and II.

■ Sotelo challenges his convictions on the remaining counts on the ground that the government failed to establish that he was in constructive possession of either of the two firearms involved in the case. We reject this challenge. The jury heard evidence that Sotelo was the bodyguard, that he was dangerous, and that his job was to kill people. They also heard testimony that he looked directly at the pillow concealing the semi-automatic pistol when the police first entered the room. This evidence was enough to sustain the conclusion that he was in constructive possession of the first firearm. As for the second firearm, the jury heard testimony that Sotelo drove a blue Buick and that he drove that car to the motel

on May 15. Taking into account that Sotelo acted as a bodyguard in the conspiracy, a reasonable jury could find beyond a reasonable doubt that Sotelo was in constructive possession of the .357 magnum revolver found under the Buick's driver's seat. We therefore conclude that there was sufficient evidence to sustain Sotelo's convictions on the remaining counts.

## VI. DOUBLE JEOPARDY

■ Sotelo contends that the district court erred by entering judgment on two separate convictions for use of a firearm during a drug crime. He argues that it is a violation of the Double Jeopardy Clause to convict a defendant on two separate counts of violating 18 U.S.C. § 924(c)(1) when the defendant has used two separate weapons during a *single* drug offense. We agree.

In *United States v. Henning,* 906 F.2d 1392 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991), we held that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized." *Id.* at 1399. In *United States v. Moore,* 958 F.2d 310 (10th Cir.1992), we modified the *Henning* rule and held that "there may be only one firearms *conviction* and sentence imposed for use of firearms during and in relation to an underlying 'crime of violence or drug trafficking crime,' under § 924(c)." *Id.* at 314 (emphasis in original). We reasoned that " '[t]he separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.' " *Id.* at 313 (quoting *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (emphasis in original)).

In this case, Count I of the indictment charged Sotelo with possession with intent to distribute less that 500 grams of cocaine. Count III charged him under § 924(c)(1) with use of the semi-automatic pistol during and in relation to the crime charged in Count I. Finally, Count V charged him with use of

the .357 magnum revolver during and in relation to the crime charged in Count I. Although it was permissible to charge Sotelo separately under Counts III and V, *see Ball*, 470 U.S. at 865, 105 S.Ct. at 1673, and although there was sufficient evidence to support the jury's verdict as to each count, it was a violation of Sotelo's rights under the Double Jeopardy Clause to enter a judgment of conviction on both Counts III and V. We therefore remand to the district court with an order to vacate Sotelo's conviction and sentence on Count V.

## VII. SENTENCING

Both Sotelo and Parra contend that the district court erred in finding that their convictions on Count IV each represented a "second or subsequent conviction" for using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. 924(c)(1), thus requiring imposition of a consecutive sentence of twenty years imprisonment. The defendants rely on our en banc decision in *United States v. Abreu*, 962 F.2d 1447 (10th Cir.1992), *cert. granted and judgment vacated*, —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993). That decision, however, has been overruled by the Supreme Court's recent decision in *Deal v. United States*, —— U.S. ——, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), in which the Court held that second and subsequent convictions in a single proceeding count as "second or subsequent convictions" for purposes of § 924(c)(1)'s sentencing enhancement clause. *Id.* at —— – ——, 113 S.Ct. at 1996–97. We therefore affirm the sentences imposed on the defendants for their convictions on Count IV.

## VIII. CONCLUSION

In sum, we reject all of the defendants' contentions except for Sotelo's double jeopardy argument. We therefore **REMAND** to the district court with an order to **VACATE** Sotelo's conviction and sentence on Count V. In all other respects, we **AFFIRM.**