# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                                                              Elisabeth A. Shumaker
Clerk                                                                                              Chief Deputy Clerk

November 19, 1996


**TO:**   All recipients of the captioned opinions

**RE:**   96-3043 U.S. v. Scroger; 96-3082 U.S. v. Taylor
       October 28, 1996; October 8, 1996


Please be advised of the following correction to the captioned decisions:

The references to Assistant United States Attorney Robin D. Fowler as "her" should be to "him." Please make the appropriate corrections.


Very truly yours,

Patrick Fisher, Clerk



Susan Tidwell
Deputy Clerk

**PUBLISH**

_____

**UNITED STATES COURT OF APPEALS**

**Filed 10/28/96**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,      )
     )
        Plaintiff-Appellee,      )
     )
v.      )      No. 96-3043
     )
JIMMY E. SCROGER,      )
     )
        Defendant-Appellant.      )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-20060)

_____

Robin D. Fowler (Jackie N. Williams, United States Attorney with him on the brief), Assistant United States Attorney, Kansas City, Kansas, for Appellee.

James T. George, Lawrence, Kansas, for Appellant.

_____

Before **MURPHY, RONEY,*** and **BARRETT,** Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

* The Honorable Paul H. Roney, Senior Circuit Judge, United States Court of Appeals for

the Eleventh Circuit, sitting by designation.

_____

Jimmy E. Scroger (Scroger) appeals his conviction and sentence following a jury trial. He was found guilty of misdemeanor possession of methamphetamine and attempt to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Facts

On July 19, 1995, at approximately 11:00 a.m., four plain-clothed police officers arrived at 4826 Parkview in Kansas City, Kansas, to conduct a "knock and talk" in response to reports of drug activity. As the officers approached the house, they heard noises coming from inside that sounded like someone was running through the house and heard someone say, "go out the back." Two officers proceeded to the front door and two officer proceeded around the sides of the house. When the officers knocked on the front door, Scroger answered the door. He was holding a hotplate in his hands, his fingertips were stained with a rust-colored residue, there was a strong odor emanating from the residence that was known to the officers to be associated with methamphetamine manufacturing, and the officers saw glassware commonly used in the manufacturing of methamphetamine inside the house. The officers identified themselves and informed Scroger that they were investigating allegations that someone was manufacturing methamphetamine at that address. At that point, Scroger attempted to push Officer Barajas out of the doorway and shut the door. Officer Barajas immediately took Scroger into custody. The officers then conducted a protective sweep of

the residence and found co-defendant Terry D. Taylor (Taylor) in the back yard hiding behind a shed. A warrant was then obtained and a thorough search of the residence was conducted revealing a large number of items commonly associated with the clandestine manufacturing of methamphetamine.

On August 23, 1995, Scroger was indicted, with co-defendant Taylor, in a seven-count indictment. Scroger was charged with possession of approximately 13 grams of methamphetamine with intent to distribute, Count I; conspiracy to manufacture methamphetamine, Count V; attempt to manufacture methamphetamine, Count VI; and using and carrying a firearm during and in relation to an attempt to manufacture methamphetamine, as well as, aiding and abetting an attempt to manufacture methamphetamine, Count VII, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. §§ 924(c) and 2.

On August 24, 1995, Scroger filed a motion to suppress the evidence obtained in the July 19, 1995, warrantless entry on the ground that Officer Barajas could have easily obtained a search warrant before forcibly entering his house. On September 19, 1995, the district court heard evidence on Scroger's motion. The motion was denied on October 16, 1995.[1]

After a three day jury trial, November 7-9, 1995, Scroger was found guilty of misdemeanor possession of methamphetamine (Count I), conspiracy to manufacture

---

[1] The district court denied Scroger's motion to suppress on October 16, 1995. However, the findings to support the district court's decision were made at sentencing on January 26, 1996.

methamphetamine (Count V), attempt to manufacture methamphetamine (Count VI), and using and carrying a firearm during and in relation to an attempt to manufacture methamphetamine (Count VII). On January 26, 1996, the district court granted Scroger's Motion for Acquittal on Count V based on insufficient evidence and on Count VII based on the Supreme Court's recent decision in <u>Bailey v. United States</u>, 116 S.Ct. 501 (1995). Scroger was then sentenced to 63 months imprisonment on Count VI and one year imprisonment on Count I, to run concurrently.

Issues

On appeal, Scroger contends that the district court erred (1) in denying his motion to suppress the evidence obtained during the warrantless entry of his residence on July 19, 1995; (2) in instructing the jury that if it found beyond a reasonable doubt that a conspiracy existed and that Scroger was a member of the conspiracy, then it could impute the acts and statements of co-conspirator Taylor to Scroger, when there was insufficient evidence presented to support a conspiracy conviction; and (3) in giving an aiding and abetting instruction applicable to all counts over Scroger's objection that he was unfairly surprised by the aiding and abetting theory.

Discussion

I.  Warrantless Entry

Scroger contends that the district court erred in denying his motion to suppress the

evidence obtained in the July 19, 1995, search of his residence. Scroger asserts that the warrantless entry of his residence was not justified by exigent circumstances and that the police had sufficient probable cause to obtain a search warrant at least two weeks prior to the unlawful entry of his house based on a confidential informant's statements that methamphetamine was being manufactured in the house which were corroborated by Officer Barajas on June 30, 1995, when he smelled an odor consistent with methamphetamine `manufacturing` outside the residence. Scroger maintains that the circumstances defining exigency in this case were clearly subject to police manipulation and abuse and do not justify the warrantless entry of his residence.

We review the district court's factual findings under the clearly erroneous standard and view the evidence in the light most favorable to the government. United States v. Wicks, 995 F.2d 964, 969 (10th Cir.), cert. denied, 510 U.S. 982 (1993); United States v. Carr, 939 F.2d 1442, 1443 (10th Cir. 1991). However, the ultimate determination concerning reasonableness under the Fourth Amendment is a question of law which we review de novo. Wicks, 995 F.2d at 969.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Therefore, absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant. Id. at 590. When the police do seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists.

United States v. Parra, 2 F.3d 1058, 1064 (10th Cir.), cert. denied, 510 U.S. 1026 (1993); Wicks, 995 F.2d at 970.

"[T]here is no absolute test for the presence of exigent circumstances because such a determination depends on the unique facts of each controversy." Wicks, 995 F.2d at 970 (internal quotations omitted). However, in United States v. Aquino, 836 F.2d 1268, 1270 (10th Cir. 1988), we articulated four requirements for a permissible warrantless entry when the police fear the imminent destruction of evidence:

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of [a] suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

"In assessing whether this burden has been met, we evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." Parra, 2 F.3d at 1064 (internal quotations omitted). "Our determination ultimately depends on the unique facts of each controversy." Id.

After a careful review of the record, we hold that the government met its burden of demonstrating that exigent circumstances justified the warrantless entry of Scroger's residence. First, there was evidence creating probable cause when Scroger answered the door. He was holding a hot plate which is commonly used to manufacture methamphetamine; his fingertips were stained rust-colored which is commonly the result of

handling red phosphorus, an ingredient in methamphetamine production; and there was a strong odor of methamphetamine production coming from the residence and Scroger himself. Second, it is well established that drug manufacturing is a serious crime. See Carr, 939 F.2d at 1448 ("Drug trafficking crimes are serious. . . ."); Aquino, 836 F.2d at 1273 ("Our cases indicate that the sale of illegal drugs is a sufficiently sever offense. . . ."). In addition, it is highly likely that the evidence would have been destroyed or moved if the officers had waited to apprehend Scroger until they had obtained a warrant. Third, the warrantless entry and protective sweep were limited in scope to ensure the safety of the officers and the residence. A full search of the residence was not conducted until after the search warrant was obtained. Finally, "'[w]hen officers have reason to believe that criminal evidence may be destroyed or removed before a warrant can be obtained, the circumstances are considered sufficiently critical to permit' a warrantless entry." Para, 2 F.3d at 1064 (quoting United States v. Cuaron, 700 F.2d 582, 586 (10th Cir. 1983).

Scroger contends that, even if these circumstances justified the warrantless entry of his residence, the district court erred in not finding that the circumstances were the product of police manipulation or abuse. He asserts that the police could have obtained a warrant at least two weeks before the "knock and talk" and that their failure to seek a warrant demonstrates that they planned to create exigent circumstances during their visit.

We conclude that the district court's finding that the officers did not manipulate or abuse the circumstances of this case was not clearly erroneous. At the suppression hearing,

Officer Barajas testified that he believed that they had insufficient evidence to obtain a search warrant before Scroger opened the door of the residence on July 19, 1995. (R., Vol. II at 17). Officer Barajas further testified that based on his training and experience when Scroger opened the door it was immediately apparent that methamphetamine was being produced at the residence at that time. Id. at 21. In addition, the officers conducted only a minimal protective sweep of the residence before obtaining a search warrant. The district court is in the best position to make credibility determinations and we do not have a "definite and firm conviction that a mistake has been committed." Para, 2 F.3d at 1065 (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985)).

## II. Conspiracy Jury Instruction No. 23

Scroger asserts that because there was insufficient evidence to support a conspiracy conviction, the district court erred in giving Jury Instruction No. 23 which allowed the jury to impute evidence against alleged co-conspirator Taylor to him on the charge of attempting to manufacture methamphetamine, Count VI.

Jury Instruction No. 23 provided that:

> If the government establishes beyond a reasonable doubt that a conspiracy existed and that defendant became a member of the conspiracy, then the acts and declarations of any other member of such conspiracy, in or out of the defendant's presence, done in furtherance of the objects of the conspiracy and during its existence, may be considered as evidence against defendant. When persons enter into an agreement for an unlawful purpose they become agents for one another.

However, statements or acts of any conspirator which are not in furtherance of the conspiracy, or made before its existence or after its termination, may be considered as evidence only against the person making them.

(R., Supp. Vol. I, Tab 69 at 23).

Although the jury found Scroger guilty of conspiracy to manufacture methamphetamine (Count V), the district court granted his post-trial motion for acquittal on that count based on insufficient evidence. The district court found that "based on this record a reasonable jury would not have found the defendant guilty of [conspiracy] beyond a reasonable doubt." (R., Vol. V at 9). Therefore, any instruction on the conspiracy charge was error, because there was insufficient evidence to permit this charge to be submitted to the jury.[2] Accordingly, we must now determine whether this error tainted the jury's guilty verdict on Count VI, attempt to manufacture methamphetamine, or was harmless error.

In conducting a harmless error review, we review the record de novo. United States v. Flanagan, 34 F.3d 949, 955 (10th Cir. 1994). The district court's erroneous submission of the conspiracy jury instruction to the jury did not rise to the level of constitutional error. See Kotteakos v. United States, 328 U.S. 750, 765 (1946) (non-constitutional harmless error standard applies when error occurred in instructing the jury and in the indictment). Thus, we apply the standard set forth in Kotteakos for non-constitutional harmless error review.

In Kotteakos, the Court stated that:

_____

[2] The government did not appeal the district court's grant of Scroger's Motion for Acquittal on Count V. See United States v. Wilson, 420 U.S. 332, 352-53 (1975). Therefore, this ruling is the law of the case.

> If, when all is said and done, the conviction [sic] is sure that the error did not influence the jury, or had very slight effect, the verdict and the judgment should stand, except where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

Kotteakos, 328 U.S. at 764-65. In other words, this is not a sufficiency of the evidence test. Rather, we must discern, in light of the whole record, "whether the error "substantially influenced" the outcome of the trial or whether we are left in "grave doubt" as to whether it had such an effect." United States v. Tome, 61 F.3d 1446, 1455 (10th Cir. 1995). See also United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990). Moreover, the government has the burden of proving that the non-constitutional error was harmless. Tome, 61 F.3d at 1455; Flanagan, 34 F.3d at 955.

In this case, we have no doubt that the evidence presented at trial regarding Taylor's actions on July 19, 1995, even if attributed to Scroger, did not substantially influence or taint the jury's guilty verdict on the attempt to manufacture methamphetamine charge. First, Count VI of the indictment charged both Scroger and Taylor with attempting to manufacture methamphetamine on or about July 19, 1995. Therefore, the only relevant evidence is that which pertains to July 19, 1995. The government acknowledges that the only evidence adduced at trial regarding Taylor on July 19, 1995, was that he was present at Scroger's

- 10 -

residence that morning and that he fled out the back door of the residence and was subsequently apprehended in the back yard. Second, Instruction No. 23 specifically cautioned the jury against imputing any acts or declarations of coconspirators that were made before or after the conspiracy. Thus, the testimony at trial regarding Taylor's methamphetamine activities in March of 1995, could not have been attributable to a July, 1995, conspiracy.[3] Finally, to the extent that Scroger's defense was effective and the jury believed that the methamphetamine manufacturing set up at his residence in fact belonged to Taylor, Scroger may still be found guilty of attempt to manufacture methamphetamine as an aider and abettor. Under those circumstances, the other evidence regarding Taylor would be immaterial. See Part III infra. Accordingly, we hold that the district court's erroneous submission of Jury Instruction No. 23 was harmless error.

## III. Aiding and Abetting Instruction

Scroger reasons that the district court erred in giving an aiding and abetting jury instruction applicable to all counts over his objection because he was unfairly surprised by the theory. He alleges that the indictment did not give fair notice that the aiding and abetting theory applied to all counts, inasmuch as it was only referenced with respect to Count VII,

---

[3] In addition, we note that it was Scroger who introduced evidence of the methamphetamine laboratory discovered at Taylor's residence in March, 1995, and of his presence in a trailer on the same property. See (R., Vol. III at 4-5, 76-79, 90-93; Vol. IV at 196). Accordingly, "an appellant may not complain on appeal of errors which he himself induced or invited." Gundy v. United States, 728 F.2d 484, 488 (10th Cir. 1984).

- 11 -

use of a firearm, and proposed to be given only with respect to Count VII in the government's original proposed jury instructions.

It is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory. United States v. Langston, 970 F.2d 692, 705 (10th Cir.), cert. denied, 506 U.S. 965 (1992); United States v. Cook, 745 F.2d 1311, 1315 (10th Cir. 1984), cert. denied, 469 U.S. 1220 (1985). We have held that "[a] defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor, providing that commission of the underlying offense is also proven." United States v. Smith, 838 F.2d 436, 441 (10th Cir. 1988), cert. denied, 490 U.S. 1036 (1989). See also Langston, 970 F.2d at 706; Cook, 745 F.2d at 1315.

In United States v. Cueto, 628 F.2d 1273 (10th Cir. 1980), Cueto challenged the aiding and abetting instruction which was given to the jury, over his objection, at the close of evidence. Cueto contended that the government proceeded on the premise that he was the principal in the bank robbery but, after all the evidence was presented, switched theories and proceeded on an aider and abettor basis. Cueto argued that this constituted improper variance of the indictment and misled him to the end that he was not fully advised as to the exact nature of the charges against him. Id. at 1275. In affirming Cueto's conviction, we held that "[e]ven though the Government's theory of the case was that Cueto, and not Bavosa, was the one who actually robbed the bank, it was nevertheless, under the circumstances, quite proper

to give the jury an instruction on aiding and abetting." <u>Id</u>.

In this case, we fail to see how Scroger was surprised, much less unfairly surprised, by the aiding and abetting instruction. As in <u>Cueto</u>, the indictment here charged Scroger as a principal and not as an aider and abettor and, like <u>Cueto</u>, it is true that the government prosecuted the case on the theory that Scroger was a principal and not an accessory to the charge. However, under the principles delineated in <u>Cueto</u>, Scroger knew, or should have known, that when more than one person is involved in a criminal act, the district court may properly submit an aiding and abetting instruction to the jury, even though it was not charged in the indictment or presented at trial. Therefore, we hold that Scroger was not unfairly surprised by the aiding and abetting instruction nor could he have been.

**AFFIRMED.**