**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RICHARD WAYNE DELAY,

    Defendant-Appellant.

No. 04-3211
(D.C. No. 03-CR-40055-01-SAC)
(Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

    Richard Wayne Delay (defendant) and Travis Jevon Jackson were jointly charged in a two-count indictment filed on June 18, 2003, in the United States District Court for the District of Kansas as follows: Count 1, possession on March 15, 2003, of more than five grams of cocaine base with an intent to distribute in violation of 21 U.S.C. § 841(a)(1); and, in Count 2, with conspiring with each other, and others, to possess on March 15, 2003, more than five grams of cocaine base with an intent to distribute in

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

violation of 21 U.S.C. §§ 841(a) and 846.[1]  Prior to trial, the defendant filed a motion to

suppress the introduction into evidence at trial of various items seized by the Junction

City, Kansas, police in a search of his motel room occurring immediately after his arrest

as a parole violator and to also suppress certain statements he made to the arresting

officers.  After hearing, the district court granted defendant's motion to suppress his

"post-arrest statements made at the motel room in response to the officers' interrogation

about drugs" and, at the same time, denied defendant's motion "in all other respects."

Thereafter, the defendant under Fed. R. Crim. P. 11(a)(2) entered a conditional

plea of guilty to Count 2 of the indictment, reserving his right to appeal the district court's

denial of his motion to suppress.  He was later sentenced to imprisonment for 151

months, to be followed by three years of supervised release and a $100.00 penalty.

Defendant now appeals the sentence imposed, contending that the district court erred in

denying his motion to suppress.  Counsel frames the one issue to be resolved on appeal as

follows:

>The court erred when it denied defendant's motion to
>suppress evidence by  holding exigency justified a search of
>the motel room after defendant's arrest on a warrant.

The factual chronology of defendant's arrest and search of his motel room is not in

any real dispute.  The defendant was well known to the Junction City, Kansas, Police

---

[1]Thereafter, on motion of the government, the district court struck the words "more
than" appearing in each count of the indictment.

Department, he, over the years, having been convicted in local Junction City courts on various drug and assault violations. On or about March 14, 2003, the Junction City police received an Arrest and Detain Order from the Kansas Department of Corrections directing the arrest of the defendant for parole violations.[2] The police learned that the defendant was registered in Room 244 of a local Junction City motel. On the following morning, at about 7:30 a.m., two officers of the police department knocked on the door of Room 244 and a moment or two later the defendant, clad only in jeans, opened the door. One of the officers, Espy, recognized the defendant from previous encounters and he told the defendant that he was under arrest for a parole violation and asked the defendant to "turn around" and "put his hands behind his back." The defendant complied, whereupon Espy and his fellow officer crossed the door's threshold with the defendant standing "less then two steps inside the room." Upon entry, the officers saw a woman, covered to her neck by sheets, lying in one of the beds. As the police were placing handcuffs on the defendant, one Travis Jackson, a co-defendant, emerged from the room's bathroom wearing only boxer shorts and a sleeveless shirt.

At or about the time Espy and his fellow officer were handcuffing the defendant, they noticed some money in plain view in a nearby open dresser drawer. After the defendant said that this was his money, the officer placed the money in defendant's

---

[2]A condition of defendant's parole post-release supervision included his consent to a search by parole officers of his "person, residence or other property."

pocket. Espy then ordered Jackson to sit where he could be observed and asked the woman lying in bed, a Ms. Hudson, to "uncover" so he could see if any weapons were "lurking." Officer Espy noticed a bag between a bed and the bathroom and he asked to whom the bag belonged, and the defendant said it was his. The officer asked if there were any weapons in the bag and the defendant said there were none. The officer then asked if he could look into the bag, and defendant said he could. In checking for weapons, Officer Espy found a large roll of money, approximately six to seven hundred dollars.

Officer Espy then espied another bag in the room between the two beds and inquired as to whom that bag belonged. Jackson said it was his bag and gave his consent to search the bag for weapons. In the search of that bag, no weapons were found, but the officers found approximately $2,500.00 in cash.

After the "bag search," the officers noticed in the dresser drawer where they had found the money claimed by the defendant, a plastic baggie that appeared to contain two rocks of crack cocaine. The officers then informed the defendant that he was also under arrest for the drugs found in the open dresser drawer. Continuing his "protective sweep," Espy entered the bathroom to ensure that there were no weapons or any person hiding there, and found therein several plastic baggies between some towels that had been stacked in the bathroom, which baggies contained cocaine base.

As indicated, the defendant moved to suppress the items seized in his room by the

police, arguing that their initial entry into his room was "unreasonable," and, alternatively, that even if the initial entry was reasonable, the ensuing search of his room was not justified and did not constitute a "search incident to a lawful arrest" nor was it a "protective sweep." The district court, after hearing, granted defendant's motion to suppress "his post-arrest statements made at the motel room in response to the officers' interrogation about drugs," but denied appellant's motion "in all other respects."

In its order the district court recognized that defendant's room in the motel was searched without a search warrant, but held, *inter alia,* that his arrest as a parole violator was lawful and that the ensuing search of his motel room was lawful, based on the "incident to arrest" and "protective sweep" exceptions to the Fourth Amendment requirement that a search be based on a search warrant based on a "probable cause."[3] We are in agreement with the district court's resolution of this matter.

In *Chimel v. California,* 395 U.S. 753 (1969) the Supreme Court held than an arresting officer may search the arrestee's person to discover and remove weapons and to seize evidence to prevent their concealment or destruction and, in line therewith, he could also search the area "within the 'immediate control' of the person arrested," which includes the room in which the arrest occurs. However, in that case the Supreme Court held that such would not justify a search of "other rooms" in the house, such as the attic

---

[3]There is no contention that the arrest itself was unlawful. It was pursuant to a parole arrest warrant.

or a garage.  Here, of course, the search occurred in defendant's room.  *See also United States v. Parra,* 2 F.3d 1058 (10th Cir. 1993).

In *United States v. Burns,* 624 F.2d 95, 101 (10th Cir. 1980), we said "[g]enerally, a limited, warrantless search of a motel room incident to the lawful arrest of its occupants is permissible.  *See United States v. Pollard,* 466 F.2d 1, 4 (10th Cir. 1972). This principle applies where, as here, the arrest occurs at an entrance way."

To the same general effect, in *United States v. Anthon,* 648 F.2d 669, 675 (10th Cir. 1981) we said "[a]n arresting officer may search the arrestee's person to discover and remove weapons and to seize evidence to prevent its concealment or destruction, and may also search the area within the arrestee's immediate control."  In *Anthon* the defendant was arrested in the hallway outside his motel room and we held that, such being the case, the search of defendant's room was not incident to his arrest. In our case the defendant was arrested <u>in</u> his motel room, not <u>outside</u> in the hallway, and under *Chimel, Burns,* and other cases, the police may search the room in which the defendant is arrested without violating the Fourth Amendment.

As concerns the search of the bathroom in defendant's motel room, we note that in *Maryland v. Buie,* 494 U.S. 325, 334 (1990), the Supreme Court spoke as follows: "[w]e also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately

launched."

Judgment affirmed.

Submitted for the Court

Robert H. McWilliams
Senior Circuit Judge