UNITED STATES of America,
Plaintiff–Appellee,

v.

Florentino SORIA, Defendant–Appellant.

No. 91–1021.

United States Court of Appeals,
Tenth Circuit.

March 18, 1992.

Rehearing Denied May 11, 1992.

John M. Hutchins, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., and Wayne Campbell, Asst. U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Marc P. Mishkin, Denver, Colo., for defendant-appellant.

Before McKAY, Chief Judge, and BALDOCK and McWILLIAMS, Circuit Judges.

**McWILLIAMS, Circuit Judge.**

Rogelio Gomez Torres and Florentino Soria were jointly charged in a two-count indictment as follows: (1) In count one they were charged with unlawfully conspiring on or about July 31, 1990, to distribute cocaine in violation of 21 U.S.C. § 846; (2) in count two they were charged with unlawfully distributing on or about July 31, 1990, cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On motion by Soria, the charges against Torres and Soria were severed for trial purposes. The jury convicted Soria on both counts of the indictment and he was sentenced to imprisonment for sixty-three months to be followed by four years supervised release.* Soria appeals his conviction and sentence.

On appeal, Soria argues that his conviction and sentence should be reversed because of the following matters: (1) The district court erred in failing to grant Soria's motion to suppress the items seized in a search of his auto body repair shop; (2) the district court erred in giving the jury instruction no. 14 which alluded to matter that was already adequately covered by instruction no. 15; and (3) the district court erred in not granting Soria's motions for judgment of acquittal made at the conclusion of the government's evidence, and renewed at the conclusion of all the evidence, and that accordingly the verdict of the jury is not supported by the evidence. We disagree with these contentions and therefore affirm. Some background facts will place appellant's arguments in focus.

Soria operated an auto body and fender repair shop in Adams County, a suburb of Denver, Colorado. Torres, a co-defendant, was the floor manager of the repair shop. One Ricardo Baca was involved in some drug offenses occurring in and around Longmont, Colorado, and, in connection therewith, was arrested and charged with criminal offenses. Baca was offered the chance to become a government informant and he accepted. Baca thereafter advised the authorities that he knew Torres and believed the latter was engaged in drug dealing activities out of Soria's auto repair shop, the Westland Auto Body.

On July 17, 1990, Baca, through prior arrangement, purchased three ounces of cocaine from Torres at Westland Auto Body. Very shortly thereafter Torres offered Baca, who had experience in auto body repair work, a job at Westland Auto Body and Baca worked there for a short time. Shortly after the July 17, 1990, transaction, Baca negotiated with Torres for the purchase of three kilograms of cocaine. In late July, 1990, both Soria and Torres were in El Paso, Texas, where they apparently met, and each then returned to Denver, Colorado. Then on July 31, 1990, Baca "bought" a kilogram of cocaine (about 22 pounds) in a transaction in which both Soria and Torres were involved. Without going into too much detail, Baca, according to his testimony, arranged the transaction primarily through negotiations with Torres, although Baca did testify that before the delivery Soria had asked him if "he had the money." Soria denied that conversation, but, be that as it may, it is agreed that on July 31, 1990, Soria delivered a box to Baca in which there was the one kilogram of cocaine. As indicated, Soria testified at trial in his own behalf and while admitting that he had delivered the "box" to Baca, he denied knowing that there was a kilogram of cocaine in the box.

The delivery from Soria to Baca of the box containing the cocaine occurred around 1:00 p.m. on July 31, 1990. There was testimony that Soria tried to flee the scene, but he was nonetheless arrested at the scene of the delivery. In this regard, Soria testified that he did not realize the non-uniformed police were in actuality police personnel.

After Soria's arrest, which occurred a short distance from the Westland Auto Body premises, the authorities proceeded to Westland Auto Body. The police, without a warrant, then entered Westland Auto Body in what the government contends was

---

* In a separate trial Torres was also convicted on both counts of the indictment and he appealed his conviction and sentence, which judgment has been affirmed contemporaneously with the filing of this opinion. *See United States v. Torres,* 959 F.2d 858 (10th Cir.1992).

only a "protective sweep." The authorities stated that they knew they didn't have a search warrant, but nonetheless entered the body shop to make certain that any incriminating evidence inside the shop would not be destroyed and also to protect themselves from possible gunshot fire from within. Having completed the protective sweep, the authorities then waited until a search warrant could be obtained. When it was received, about 4:30 p.m. on the same date, the authorities proceeded to search Westland Auto Body and seized, *inter alia,* 413 grams of cocaine in 14 baggies, a Nexus triple beam scale, and approximately $4,980 in U.S. currency.

Prior to trial, Soria filed a motion to suppress any use at trial of the items seized in the search of Westland Auto Body and also sought the return of the $4,980 in currency seized in the search, contending that the currency was not drug related and was connected with his auto body repair shop. After hearing, the district court denied the motion, which was renewed during trial, and again denied. As his first ground for reversal, Soria claims that the district court erred in denying the motion to suppress. We disagree.

■ As indicated, the police officers testified that they had reason to believe that Westland Auto Body was being used for drug distribution purposes, and that accordingly, after arresting Soria, they went to Westland Auto Body. Admittedly at that point in time the authorities did not have a search warrant. Nonetheless they determined to make a so-called "protective sweep" to make sure there was no person inside who might destroy incriminating evidence or possibly open fire on them. A protective sweep is not a full search, but rather a quick, cursory inspection of the premises, permitted when police officers reasonably believe, based on specific and articulable facts, that the area to be swept harbors an individual posing danger to those on the arrest scene. *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). It would appear that in the ensuing "protective sweep" nothing was "seized," and counsel in his reply brief concedes that "the government did not physically remove the objects sought to be suppressed on their first entry at about 1:30 p.m." They did find one person in the premises, and he was removed therefrom. After exiting the Westland Auto Body premises, the police interviewed various persons and did not make the actual search of the premises until around 4:30 p.m. after a search warrant was obtained and brought to the scene.

■ There are cases which uphold a warrantless protective sweep where there is a contemporaneous "search" and "seizure." That is not our case, where the actual "search and seizure" took place after a warrant was obtained. The fact that in their protective sweep the police may have seen certain items in "plain view," but which were not seized until later, does not render either the protective sweep, or the subsequent search pursuant to a warrant, unlawful. The district court did not err in denying Soria's motion to suppress. In support of the foregoing, *see United States v. Carr,* 939 F.2d 1442 (10th Cir.1991) and *United States v. Tisdale,* 921 F.2d 1095 (10th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991).

■ Soria next argues that it was reversible error for the district court to give instruction no. 14 when instruction no. 15 covered the same subject matter. It is true that both instructions advised the jury that a person's mental intent, or lack of intent, was generally shown by circumstantial evidence and seldom shown by direct evidence. Counsel agrees that instruction no. 14 was a correct statement of the law, but argues that there was no need for two instructions on essentially the same matter. That is generally correct. However, we fail to see how such was of any real prejudice to Soria.

■ Soria's last ground for reversal is that the evidence is insufficient to support the verdict of the jury. We disagree. Soria was the lessee of the leased premises where he operated an auto body and repair shop. Torres was his right hand man. On July 17, 1990, Baca, the informant, bought three ounces of cocaine from Torres at the

Westland Auto Body premises. Later, Baca negotiated with Torres for the purchase of three kilograms of cocaine. Soria and Torres then went to El Paso, Texas. On their return, Baca continued his negotiations with Torres and, although Soria denied the conversation, shortly before the July 31, 1990 delivery, Soria asked Baca if he had "the money." And it is undisputed that Soria himself delivered a "box" to Baca in which there was one kilogram of cocaine. The fact that Soria denied knowing what was in the box did not end the matter. And then, after the officers moved in, Soria made efforts to flee the scene. Again, the fact that Soria testified that he was scared and did not know they were police officers is not dispositive. Such only posed disputed issues of fact which have now been resolved by the jury. Certainly there is evidence to support Soria's conviction on count two, i.e., the sale of cocaine to Baca on July 31, 1990. Soria delivered the cocaine to Baca. The record also supports the jury's verdict on count one, i.e., that on July 31, 1990, and prior thereto, Soria and Torres cooperated with each other and otherwise conspired to distribute cocaine.

Judgment affirmed.

McKAY, Chief Judge, concurring:

I concur in the court's judgment in this case and in all of the court's opinion except that part of the opinion relating to the court's denial of the motion to suppress items seized from the auto body repair shop. I concur in sustaining the trial court's decision not to grant the motion to suppress but on narrower grounds.

The so-called "protective sweep" is justified only in connection with protecting officers otherwise on the premises to execute a valid arrest. When an arrest takes place away from the premises at the distance that appears to be involved here, the officers are obviously in no danger unless they go on the premises with a valid warrant or other valid justification. Thus the threshold necessary to justify a protective sweep is not met absent more of a showing than has been made on the record in this case.

*Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Owens,* 782 F.2d 146, 151 (10th Cir.1986). However, I do not think that the protective sweep needs to be reached in this case. Nothing was seized prior to the authorities obtaining a proper search warrant. In addition, nothing in this record indicates that anything seen during the so-called "protective sweep" was used in order to obtain the search warrant. To the contrary, from the face of the warrant it appears that the information used was entirely independent from the so-called "protective sweep." Under those circumstances, everything sought to be suppressed was the fruit of a valid search warrant. The judicially-invented "protective sweep" is thus entirely unnecessary to justify denying the motion to suppress in this case.