**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 11 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BEN GARRISON, as personal
representative of the Estates of Ralph
Garrison deceased and Molly Garrison,
for Molly Garrison individually,

       Plaintiff-Appellant,

v.

JOE POLISAR, Albuquerque Police
Chief, JOE BOWDICH, Bernalillo
County Sheriff, in their official and
individual capacities; HOWARD NEAL
TERRY, ERIK LITTLE, JAMES
MONTEITH, Sheriff's Officers, in their
individual capacities; LT. RUBEN
DAVALOS, LT. J. R. DEBUCK, LT.
JUDD SCHAFFER, SGT. KEVIN
McCABE, Albuquerque Police
Supervisors; STEVE RODRIGUEZ,
Acting Sgt.; CHARLES LOPEZ,
Albuquerque Police Officer; CHRISTINA
BACA, MARY PATRICK, MARY
MARQUEZ, GILBERT DURAN,
Albuquerque Police
Dispatchers/Operators; SGT. KENNETH
BOZELL, LT. LINTHICUM, CAPTAIN
STEBLETON, Bernalillo County
Sheriff's Supervisors; JAMES
GONZALES, PATRICK LUCERO,
FERMIN ORTEGA, GREG REESE,
DAVID ARCHIBEQUE, DEPUTY VAN
ELDREDGE, Bernalillo County Sheriff's
Officers,

       Defendants-Appellees.

No. 99-2193
(D.C. No. CIV-96-1801-LH/DJS)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit **Judge, McWILLIAMS**, Senior Circuit Judge, and **MAGILL**[**], Senior Circuit Judge.

On October 3, 1997, Molly Garrison, individually and as the personal representative of the estate of her deceased husband, Ralph Garrison, filed a second amended complaint in the United States District Court for the District of New Mexico alleging a violation of civil rights under 42 U.S.C. § 1983, asserting several state tort claims and naming as defendants 12 members of the Albuquerque Police Department and 12 members of the Bernalillo County Sheriff's office. (The City of Albuquerque and Bernalillo County were not named defendants in the second amended complaint.[1]) The basis for the action was the shooting and killing of Molly Garrison's husband, Ralph Garrison, during a search of premises in Albuquerque which were located next door to the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1] The original complaint is not a part of the record on appeal. Nonetheless, it would appear that the City of Albuquerque and Bernalillo County were named as defendants, along with individual officers of each, in the original complaint.

residence where Molly and Ralph Garrison resided. In her amended complaint Molly Garrison set forth seven claims for relief: (1) unreasonable search in violation of the Fourth and Fourteenth Amendments; (2) unreasonable seizure in violation of the Fourth and Fourteenth Amendments; (3) supervisory and official capacity liability for violation of constitutional rights; (4) conspiring to violate civil rights under 42 U.S.C. § 1983; (5) wrongful death caused by law enforcement officers' assault and battery; (6) false imprisonment by law enforcement officers; and (7) negligence of law enforcement officers causing enumerated torts.[2] After discovery, all defendants filed motions for summary judgment. By unpublished orders, the district court on March 31, 1998, granted some of those motions and thereafter on March 12, 1999, granted additional motions for summary judgment. Finally, on May 12, 1999, the district court granted all pending motions for summary judgment and entered an order dismissing all of Garrison's claims as to all 24 defendants. Garrison appeals. We affirm.

Some limited background facts become necessary. On December 16, 1996, pursuant to a search warrant, there was a joint search at about 6:00 a.m. of the premises at 2615 Quincy, Northeast in Albuquerque, New Mexico, carried out by the Albuquerque Police Department and the Bernalillo County Sheriff's Office. Molly and Ralph Garrison resided next door at 2619 Quincy and owned the 2615 premises, which they had rented to

---

[2]During the course of the proceedings in the district court Molly Garrison died, and the Garrisons' son, Ben Garrison, was substituted as the personal representative of both Ralph and Molly Garrison's estates.

another. During the course of the search, Ralph Garrison, age 69, exited his back door and confronted certain of the officers who were conducting the search. The officers were in SWAT uniforms and told Garrison who they were and what they were doing. Garrison was ordered to go back into his house which he did, apparently rather reluctantly. Inside, Garrison called 911 and told the operator his story. The 911 conversation was tape recorded and is a part of the record on appeal. The conversation ended when Garrison said he was going out to "shoot the sons-of-bitches." Garrison then began exiting his back door, this time with a weapon in his hand, and there was a second confrontation between Ralph Garrison and certain of the defendants wherein certain of the defendants shot Garrison as he was aiming his weapon at fellow officers. After the shooting, Ralph Garrison fell back into his home, and certain of the defendants followed him into the house, handcuffed him and made a search of the premises in which they allegedly "seized" Molly Garrison. An ambulance took Ralph Garrison to a hospital and he died shortly thereafter. Molly Garrison was not in good health and Ben Garrison was called by one of the defendants and he came and took charge of his mother.

As indicated, the district court by three separate orders granted the defendants' motions for summary judgment and entered judgment in favor of all defendants on all claims. The orders of the district court were in considerable detail. In sum, the district court held that on the record before it Officer Terry of the Albuquerque Police Department had not used excessive force in shooting Ralph Garrison and that his actions,

- 4 -

under the described circumstances were "objectively reasonable" and that there was no violation of any constitutional right; that the ensuing search of the Garrison residence was a legitimate "protective sweep;" and that any "detention" of Molly Garrison culminating in placing her in the care of her son was proper under "the Fourth Amendment's caretaking function." For similar reasons, the district court concluded that the state claims asserted in the complaint were without merit.

On appeal, counsel's main argument is that the district court usurped the function of a jury, and that all of the various issues should have been submitted to a jury and not decided on summary judgment. In thus arguing, counsel necessarily relies on the depositional testimony of the various defendants, since Ralph Garrison was dead and could not give his version of events.

As concerns Garrison's § 1983 claim, the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 395-7 (1989) spoke as follows:

> Today we make explicit what was implicit in *Garner'*s
> [*Tennessee v. Garner*, 471 U.S. 1 (1985)] analysis, and hold
> that *all* claims that the law enforcement officers have used
> excessive force – deadly or not – in the course of an arrest,
> investigatory stop, or other "seizure" of a free citizen should
> be analyzed under the Fourth Amendment and its
> "reasonableness" standard, rather than under a "substantive
> due process" approach.

> *   *   *   *   *

> As in other Fourth Amendment contexts, however, the
> "reasonableness" inquiry in an excessive force case is an
> objective one: the question is whether the officers' actions are

"objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

In line with *Graham,* in *Allen v. Muskogee, Okl.,* 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied,* 522 U.S. 1148 (1998),  we spoke as follows:

> We analyze a § 1983 claim of excessive force by determining whether the officers' actions were objectively reasonable in light of the surrounding facts and circumstances.
>
> *         *         *         *         *
>
> The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force.  Of course, the use of force must be judged from the perspective of a reasonable officer "on the scene," who is "often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation."  However, as we stated in *Sevier*: "[t]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force."  We will thus consider an officer's conduct prior to the suspect's threat of force if the conduct is "immediately connected" to the suspect's threat of force (citations omitted).

We agree that Officer Terry and the two other officers who fired at Ralph Garrison when he was aiming his weapon at other officers were acting "objectively reasonable in the light of surrounding facts and circumstances."  Counsel argues that under *Allen*, which cited with approval *Sevier  v. City of Lawrence, Kan.,* 60 F.3d 695, 699 (10th Cir. 1995), the defendants' "own reckless or deliberate conduct during the

seizure unreasonably created the need to use such force."[3]  We see no "reckless or deliberate" conduct by any of the defendants which in any way created "the need to use such force."  In this regard, counsel stresses the fact that when Ralph Garrison returned to his residence after his first confrontation with the officers, one of the officers remarked that he hoped Garrison would not return with a gun.  Counsel suggests that such utterance somehow proves that the officers' conduct somehow precipitated the second confrontation wherein the shooting occurred.  We fail to see the connection.  The central fact is that when the fatal shots were fired, Ralph Garrison was aiming his gun at other officers at the scene.  Considering the circumstances, we agree that Officer Terry was acting "objectively reasonable."  He did not have to wait for Garrison to fire the first shot.

After being shot, the officers followed Ralph Garrison into the house where they made a "protective sweep" for their own safety.  *Maryland v. Buie,* 494 U.S. 325 (1990)*; United States v. Soria,* 959 F.2d 855 (10th Cir.), *cert. denied,* 506 U.S. 882 (1992).  Such, in our view, was also "objectively reasonable."  Nor do we perceive any unlawful "detention" of Molly Garrison.  She was obviously infirm, and the officers, in a sense, took care of her until they turned her over to her son.  Certainly there was no "excessive force" by any of the officers.  *See United States v. King*, 990 F.2d 1552, 1560

---

[3]In *Sevier,* footnote 7, we said that "negligent actions precipitating a confrontation would not, of course, be actionable under § 1983."

(10th Cir. 1993), where we, citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), observed that police officers are expected to exercise "community caretaking functions" which are independent of any criminal investigation.

As to Garrison's state claims, we are disinclined to disturb the district court's understanding of local New Mexico law or his application thereof to the present facts.

Judgment affirmed.

Entered for the court,

Robert H. McWilliams
Senior Circuit Judge