**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 8 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BRYAN KEITH CARTER,

      Defendant - Appellant.

No. 03-3045

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 02-40050-01-JAR)**

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Topeka, Kansas, for Defendant - Appellant.

Nancy Landis Caplinger, Assistant United Sates Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff - Appellee.

Before **SEYMOUR** , **McWILLIAMS** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

      Defendant Bryan Keith Carter conditionally pleaded guilty to possession of

a firearm after previously being convicted of three felonies, in violation of 18

U.S.C. § 922(g), and now appeals the district court's denial of his motion to suppress evidence. The firearms were in the garage of his mother's home, where he was staying at the time. Officers discovered them after obtaining consent to search the garage from Defendant, his mother, and his mother's boyfriend. Defendant appeals the denial of his motion to suppress on the ground that the consents were tainted by preceding Fourth Amendment violations. We hold that the officers violated the Fourth Amendment (as applied to the States under the Fourteenth Amendment) when they conducted a "sweep"of the garage before obtaining consent. We remand to the district court to determine whether the consents were fruit of that violation.

## I.    STANDARD OF REVIEW

In reviewing a decision on a motion to suppress, we "view the evidence in the light most favorable to the district court's findings," accepting those findings unless they are clearly erroneous. *United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir. 1997). "[T]he credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir. 1994). "The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo." *Toro-Pelaez*, 107 F.3d at 824.

## II.    BACKGROUND

At about midnight on March 11, 2001, Officers Souma and Garman of the Topeka Police Department went to the home of Defendant's mother to investigate a tip regarding possible drug use and stolen property. (Although the district court's opinion recites that the tip concerned "trafficking of drugs," *United States v. Carter* 2002 WL 31385813, *1 (D. Kan. 2002), Officer Souma testified that it concerned "illegal narcotic use," Tr. at 16, and Officer Garman testified only about a report of possible "illegal activity," *id*. at 70.) Their intention was to conduct what they called a "knock and talk"—knock on the door and talk to whoever answered. The officers drove past the house twice. Upon observing lights on inside the house, they decided to go ahead with the knock and talk despite the late hour.

After parking near the front of the house, they proceeded up the driveway. Each officer wore street clothes except for a police vest; Officer Garman's vest was covered by an overcoat. On their way to the front door, the officers shined their flashlights into a car parked in the driveway to ensure that no one was inside who could pose a threat to them.

Defendant and a friend were in a garage detached from the house on the back of the lot. A fence with a gate extended along the driveway from the house to the garage, separating the driveway from the backyard. A side door to the

garage opened into the backyard. Defendant and his friend observed the officers by means of a video camera Defendant had installed in the garage. Believing that the officers might be attempting to steal Defendant's car, they ran out the side door of the garage and through the gate to the driveway, where they approached the officers in a combative manner. The officers identified themselves as police, while Officer Souma drew his weapon. Defendant and his friend stopped, and Defendant dropped something. After the officers handcuffed the two men, Officer Garman examined the object Defendant had dropped. It was a bag of marijuana.

About this time, Defendant's mother and her boyfriend came out of the house. Soon thereafter three narcotics officers arrived, and Officers Souma and Garman decided to secure the backyard and garage for their safety and to prevent the destruction of any evidence. They checked out the backyard and entered the garage, where Officer Souma observed the barrel of a shotgun, a small bag of white powder he believed to be methamphetamine, and various electronic items (such as cameras and handheld personal computers).

Officer Souma read Defendant his *Miranda* rights, and the officers informed him of what they had seen in the garage. They asked him to consent to a search of the garage and his car. Defendant signed a consent form, but contends that he agreed to allow the officers to search only his car. The consent form is

filled out with two different pens, and Defendant testified that when he signed the form it was filled out only for the vehicle, not for the garage. The district court, however, found that Defendant's testimony was not credible, and chose to believe the testimony of the officers, who said that Defendant had consented to the search of the garage.

Because it was not clear to the officers who had authority to consent to the search of the garage, they also sought the consent of Defendant's mother and her boyfriend. They explained to the two why they were there and what they wanted to do. Officer Garman explained the mother's rights in such detail that she asked him whether he was trying to convince her not to give consent. She and her boyfriend consented to the search. During the subsequent search of the garage, the officers seized the two firearms that formed the basis of the indictment.

Defendant appeals, contending that (1) the police had insufficient cause to initiate a knock and talk, and the procedure was executed in an unreasonable manner; (2) the police had insufficient cause to enter the backyard and garage without a warrant; and (3) any consent obtained was fruit of the preceding Fourth Amendment violations. Exercising jurisdiction under 28 U.S.C. § 1291, we remand for further proceedings.

## III. DISCUSSION

### A. Initial Entry and Seizure of Defendant

Defendant argues that "[t]he police entry onto the premises . . . at midnight on the basis of an anonymous, uncorroborated tip about drug use and stolen property was unreasonable under the Fourth Amendment." Aplt. Br. at 8. He contends that the officers had insufficient cause to initiate a knock and talk, and that the officers conducted the procedure in an unreasonable manner. As he describes the episode, "[b]ased on an entirely unsubstantiated tip," the officers unreasonably "went to a dark residential street at midnight, dressed in dark civilian clothing, and began shining their flashlights into cars parked in the driveway of the private residence." *Id.* at 10. According to Defendant, although a knock and talk is ordinarily a consensual encounter, the officers' encounter with him was not at all consensual. He points to the hour at which the officers approached the house, the officers' use of weapons and handcuffs, their decision not to park directly in front of the house, the resemblance of the officers' behavior to that of car thieves, and the arrival of other officers shortly after the initial encounter with Defendant and his friend.

We are not persuaded. These actions of the officers (which, as it turned out, did not constitute a knock and talk) were lawful.

-6-

The officers' initial conduct—driving by the house two times, parking nearby, walking up the driveway, and shining their flashlights into a car in the driveway—do not implicate the Fourth Amendment. The officers had not seized anything or anyone. Nor had they conducted a search. *See United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003) ("[W]hen the police come on to private property to conduct an investigation . . . and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." (quoting 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 2.3(f), at 506-08 (3d. ed. 1996))); *United States v. Rascon-Ortiz*, 994 F.2d 749, 754 (10th Cir. 1993) ("[T]here is no legitimate expectation of privacy in a car's interior if an officer looks through the car's window"); *id.* at 755 ("'[T]he use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.'" (quoting *Texas v. Brown*, 460 U.S. 730, 740 (1983))). Defendant conceded this much at oral argument.

Nonetheless, Defendant contends that a Fourth Amendment violation occurred when one officer drew his weapon and Defendant was placed in handcuffs. He asserts that the officers should have instead heeded his command that they leave the premises. It is uncertain when Defendant told the officers to

leave. (Defendant testified that it was only after he was in handcuffs; the district court made no finding on the issue.) But in any event, the officers had sufficient cause to act as they did.

A brief detention is permissible if based on "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (internal quotation marks omitted). "[C]ourts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* (internal quotation marks omitted).

The officers had received a tip that persons at the house were using drugs and possessed stolen property. Although the government does not contend that the tip alone was sufficient to establish reasonable suspicion, it is a factor for consideration. *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1322-23 (10th Cir. 1998). As the officers walked up the driveway, Defendant and his friend came running out of the garage in an aggressive manner. When the men Defendant was confronting identified themselves as police officers, Defendant proceeded to drop something. The officers then had reasonable suspicion to suspect that criminal activity was afoot, and could detain Defendant for investigation. *See United States v. Dupree*, 202 F.3d 1046, 1049 (8th Cir. 2000) (individual's "evasive action in dropping a small object off the bridge before

talking to the police gave [the officer] reasonable suspicion that criminal activity was afoot, as the anonymous tipster had reported").

As for the propriety of drawing a weapon and handcuffing Defendant, we have recognized that "[a] law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists." *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993) (internal quotation marks omitted). Given that Defendant and his friend were combative when they first encountered the officers, the drawing of the weapon was lawful. Officers may use guns when they "reasonably believe the weapons are necessary for their protection." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002) (internal quotation marks omitted). Similarly, with respect to handcuffs, their use is proper so long as there is "a reasonable, articulable ground for fearing danger" from a particular individual. *Id.* at 1221. Although the officers may have later learned that Defendant believed them to be car thieves, the weapon was drawn and Defendant was handcuffed within a very brief time period, when the officers could not be sure what type of threat Defendant and his friend posed. The officers acted reasonably in the circumstances.

The initial entry onto the premises and the subsequent detention of Defendant did not violate the Fourth Amendment.

**B. Sweep of the Backyard and Garage**

Defendant next argues that the officers' entry into the backyard and sweep of the garage violated the Fourth Amendment. He asserts that the officers could enter the backyard and garage only under exigent circumstances, and that such circumstances did not exist.

The government concedes that the garage should be treated as a home for purposes of Fourth Amendment analysis, and does not challenge Defendant's assertion that the backyard should likewise be treated as a home because it is within the curtilage of the residence. *See Oliver v. United States*, 466 U.S. 170, 180 (1984) ("[T]he curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, . . . and therefore has been considered part of home itself for Fourth Amendment purposes." (internal quotation marks omitted)). The government argues, however, that the officers properly conducted a limited protective sweep of the backyard and garage "out of concern for their safety and to insure against the potential destruction of evidence." Aplee. Br. at 13.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590.

"[A]bsent consent or exigent circumstances, police may not enter a citizen's residence without a warrant." *United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1997). "The government bears the burden of establishing exigency. In our assessment of whether the burden is satisfied, we are guided by the realities of the situation presented by the record. We should evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." *United States v. Rhiger*, 315 F.3d 1283, 1288 (10th Cir. 2003) (internal quotation marks and citations omitted).

We first consider the government's assertion that the officers' entry into the backyard and sweep of the garage was justified by the possibility of destruction of evidence. "When officers have reason to believe that criminal evidence may be destroyed, . . . or removed, . . . before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought." *United States v. Cuaron*, 700 F.2d 582, 586 (10th Cir. 1983). There are "four requirements for a permissible warrantless entry when the police fear the imminent destruction of evidence." *Scroger*, 98 F.3d at 1259. Such an entry must be "(1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly

defined indicators of exigency that are not subject to police manipulation or abuse." *Id*. (quoting *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988)).

Here, the second factor is dispositive. There was simply no evidence that destruction of evidence was likely. Indeed, the government points to no reason to believe that other people were in the garage, or even the house. All indications were to the contrary. Defendant and his friend charged out of the garage. Defendant's mother and her boyfriend came out of the house shortly thereafter. Who was left to tamper with evidence? *See United States v. Anderson*, 981 F.2d 1560 (10th Cir. 1992) (insufficient risk of destruction of drugs in house when no evidence to support reasonable belief that someone remained in the house). Moreover, the only crime for which there was probable cause was possession of a small quantity of marijuana, in all likelihood a misdemeanor, a crime that does not reach the level of "serious crime" required by *Aquino. Cf. Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) (in the context of entry of home to effect a warrantless arrest, "application of the exigent-circumstances exception . . . should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed"); *Scroger*, 98 F.3d at 1260 (drug manufacturing and drug trafficking are serious crimes).

The government also asserts that the entry into the backyard and garage was justified as a "protective sweep" to ensure the officers' safety. "Threats to public safety are widely accepted as one of the exigent circumstances exceptions to the Fourth Amendment's warrant requirement." *Rhiger*, 315 F.3d at 1288-89 (warrantless entry of home justified by danger of methamphetamine manufacturing going on at the time). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Such a sweep is permissible "if the searching officer possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* (internal quotation marks and citations omitted).

The protective-sweep doctrine arose in the context of an arrest in a home. *See, e.g., id*. Officers within the home of an arrestee may be particularly vulnerable to a dangerous confederate out of sight within the home. The risk is substantially diminished when the officers effect the arrest outside the home. *See id.* at 333 ("An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."). Here, the government

-13-

has pointed to no specific, articulable facts suggesting that the backyard or garage harbored anyone who posed a danger to them. It relies on the fact that Defendant and his friend came running out of the garage in a combative manner. But the officers had no reason to believe a third person had stayed behind, or that such a person would attack them while they were outside. *See United States v. Hogan*, 38 F.3d 1148, 1150 (10th Cir. 1994) (protective sweep of murder suspect's house after his arrest was not justified when "[t]here was no indication that the officers were in danger from a hidden accomplice"). *Cf. United States v. Cavely*, 318 F.3d 987, 996 (10th Cir. 2003) (protective sweep of residence was reasonable even though defendant was arrested outside, when defendant "admitted he had 'a friend' inside the house, but the friend did not appear or answer when officers knocked," and prior search of residence had discovered firearms); 3 LaFave, *supra*, § 6.4(c) at 333-34 (discussing very limited circumstances in which protective sweep of home may be justified even though arrest is outside home). Of course, there could always be a dangerous person concealed within a structure. But that in itself cannot justify a protective sweep, unless such sweeps are simply to be permitted as a matter of course, a result hardly indicated by the Supreme Court in *Buie*. Accordingly, we conclude that the officers' entry into the backyard and garage was unreasonable under the Fourth Amendment. We do not read *United States v. Hutchings*,127 F.3d 1255, 1259 (10th Cir. 1997), as departing from the recognized requirements for a sweep.

## C.    Consent

Finally, Defendant challenges the district court's determination that the search was valid based on consent. Having found that the officers' entry into the backyard and sweep of the garage violated the Fourth Amendment, we conduct a dual inquiry regarding the validity of the subsequent consents. "When a consensual search is preceded by a Fourth Amendment violation, . . . the government must prove not only [1] the voluntariness of the consent under the totality of the circumstances, but the government must also establish [2] a break in the causal connection between the illegality and the evidence thereby obtained." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994) (internal citation and quotation marks omitted).

The district court found that the consents of Defendant, his mother, and his mother's boyfriend were all voluntary. Defendant apparently does not challenge the district court's determination that the consents were voluntary under the general totality-of-the-circumstances standard set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). His argument instead concerns the second part of the analysis—whether the consents were the fruit of preceding constitutional violations. Because the district court did not find a constitutional violation, it did not address this argument. In these circumstances—when the district court has determined that a consent was voluntary under *Schneckloth* but

-15-

did not consider whether the consent was the fruit of a preceding illegality—we must review the fruit-of-the-poisonous-tree issue de novo, or remand for the district court to make a finding. *See Melendez-Garcia*, 28 F.3d at 1054. Here, we believe that the district court is better able to address this issue, so we remand the matter. The district court should decide in the first instance whether any of the consents was valid despite the preceding constitutional violation.

## IV. CONCLUSION

The officers' initial entry onto the premises and their seizure of Defendant did not violate the Fourth Amendment. Their subsequent entry into the backyard and sweep of the garage, however, were unreasonable under the Fourth Amendment, necessitating a consideration of whether the consents were fruit of the violation. Because the district court did not evaluate whether the consents were tainted by the preceding illegality, we REMAND this matter to the district court to make that determination. We retain jurisdiction over this appeal pending supplementation of the record by the district court.