**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARC ANTHONY FAMIGLIETTA,

    Defendant-Appellant.

No. 05-2031

(D.C. No. CR-04-349 BB)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, LUCERO,** and **MURPHY**, Circuit Judges.

Marc Anthony Famiglietta entered a conditional plea to being a felon in
possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He
appeals the district court's decision denying his motion to suppress evidence. We
exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.  Background

In early 2004, Detective Daniel Campbell of the Albuquerque, New Mexico Police Department received information from a confidential informant about a fraudulent check operation occurring at 801 Louisiana Boulevard, apartment number 6.  The informant also provided a description of an individual named Marc, also known as Demon.

Within a week of receiving that information, Detective Campbell and Officer Corey Wadley, both dressed in civilian clothing, went to apartment number 6 and knocked on the door.  The two officers wanted to conduct a "knock and talk" to see if they could identify someone by the name of Marc or Demon and talk to him about what was going on at the apartment.  At the time, Detective Campbell did not believe that he had enough information to obtain a search warrant.  When Marc Famiglietta opened the door, Detective Campbell and Officer Wadley identified themselves as officers of the Albuquerque Police Department.  At that point, Officer Wadley noticed a female standing approximately four to six feet behind Famiglietta, and a man sitting on the couch in the living room.  The female was later identified as Karen Robertson, and the man sitting on the couch was later identified as Raymond Acuna.

Detective Campbell asked Famiglietta, "Are you Marc?"  Before Famiglietta answered, Officer Wadley went inside the apartment to confront

Robertson. According to Officer Wadley, while he was standing outside the apartment door, he observed Robertson holding something in her fist, and looking around the room as if trying to find a place to conceal something. Officer Wadley testified that he asked Robertson, while he was still standing next to Detective Campbell, "What's in your hand?", and she responded, "It's empty."[1] Officer Wadley stated that in Robertson's hand he saw a small plastic bag, with some writing or characters on the outside, and white residue on the inside. Based on his experience and training, Officer Wadley believed the bag contained methamphetamine. As a result, Officer Wadley entered the apartment to retrieve the bag. As he was walking toward Robertson, Officer Wadley also observed Acuna stuffing papers and other items into the side of the couch.

Concerned for Officer Wadley's safety, Detective Campbell asked Famiglietta to go back inside the apartment with him. Famiglietta started walking toward the back of the apartment, ignoring Officer Wadley's requests to stop. As a result, Officer Wadley approached Famiglietta, physically restrained him, and directed him back to the living room. After Officer Wadley had Famiglietta place his hands on top of his head, Famiglietta voluntarily informed Officer Wadley that he had a gun in his back pocket. Meanwhile, Detective Campbell moved

---

[1] It is unclear from the record whether Robertson was referring to her hand or a bag that was in her hand.

Robertson and Acuna outside of the apartment. Detective Campbell and Officer Wadley eventually seized the bag Robertson had held in her hand, the gun on Famiglietta's person, and the items Acuna stuffed in the couch. A field test of the bag tested positive for methamphetamine.

After additional officers arrived to secure the apartment, Detective Campbell left to obtain a search warrant. A later search recovered three computer towers, two printers, check paper, government savings bonds, identification cards, birth certificates, and social security cards.

## II. Standard of Review

This court reviews de novo a district court's determination of the reasonableness of a search and seizure under the Fourth Amendment. United States v. Abdenbi, 361 F.3d 1282, 1287 (10th Cir. 2004). When reviewing a denial of a motion to suppress, we look at the totality of the circumstances and view the evidence in the light most favorable to the government. United States v. Gay, 240 F.3d 1222, 1225 (10th Cir. 2001). Further, we accept the factual findings of the district court unless they are clearly erroneous. United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." Manning v. United States, 146 F.3d 808, 812 (10th Cir.

1998).

## III.  Discussion

Ruling from the bench, the district court found that exigent circumstances permitted Officer Wadley to enter the apartment without a search warrant:

> . . . I would say that there was sufficient exigent circumstances.  I believe the officer that he saw the baggie in Mrs. Robertson's hand.  That, in and of itself, I think would probably be sufficient, certainly, if it was narcotics and easily disposable, to allow him to enter.

Vol. V. at 153-54.[2]

On appeal, Famiglietta maintains that Officer Wadley's decision to enter the apartment violated the Fourth Amendment.  Specifically, he contends that the circumstances surrounding Officer Wadley's "hurried judgment" that the bag in Robertson's hand contained drugs did not amount to clear evidence of probable cause or the sort of exceptional circumstances necessary to dispense with the warrant requirement.

The Supreme Court has recognized that even with probable cause, police officers may not enter a dwelling to make an arrest absent consent or exigent circumstances.  Payton v. New York, 445 U.S. 573, 590 (1980) ("The Fourth

---

[2]     A woman named Cindy Turk rented apartment number 6 at 801 Louisiana Boulevard, and according to Famiglietta, she asked him to watch over her apartment while she went out of town to visit relatives.  The district court ruled that, although a close question, Famiglietta had standing to make his Fourth Amendment challenge.  The government does not challenge this ruling on appeal.

Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). In analyzing whether exigent circumstances are present, this court has recognized that "there is no absolute test . . . because such a determination ultimately depends on the unique facts of each controversy." United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir. 1998) (citation omitted). We have, however, recognized certain general factors. Id. For instance, where police fear the destruction of evidence, an exception to the warrant requirement exists, allowing police to enter the home of an unknown suspect, when it is:

> (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indications of exigency that are not subject to police manipulation or abuse.

Id. (citation omitted).

We agree with the district court that the existence of probable cause and exigent circumstances justified the warrantless entry into the apartment. First, Officer Wadley had probable cause to believe that a crime was occurring in his presence. See Illinois v. Gates, 462 U.S. 213, 245 (1983) (noting that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"). From the threshold of the apartment door, Officer Wadley observed Robertson holding something in her hand, which was

moving back and forth. He testified that Robertson was looking around the room as if she was trying to hide something. When Officer Wadley asked Robertson to open her hand, he saw a small, plastic bag with white residue on the inside, and some markings on the outside. Based on his experience and training, Officer Wadley believed that the bag contained methamphetamine. Famiglietta challenges the trustworthiness of Wadley's observations, maintaining that, at best, Officer Wadley "caught a quick look at a small bag from a considerable distance." Aplt. Br. at 23. We refuse, however, to second guess Officer Wadley's ability to recognize suspicious conduct and detect unlawful substances in light of his experiences and training in that area, as well as the district court's conclusion as to the weight and credibility of his testimony.[3]

---

[3]  We assume, without deciding, that possession of methamphetamine is a sufficiently "serious crime." See United States v. Carr, 939 F.2d 1442, 1448 (10th Cir. 1991) ("Drug trafficking crimes are serious . . ."); United States v. Aquino, 836 F.2d 1268, 1273 (10th Cir. 1988) ("the sale of illegal drugs is a sufficiently severe offense"); but see United States v. Carter, 360 F.3d 1235, 1242 (10th Cir. 2004) ("the only crime for which there was probable cause was possession of a small quantity of marijuana, in all likelihood a misdemeanor, a crime that does not reach the level of a 'serious crime' required by Acquino"). In our view, Famiglietta's briefs fail to discuss the issue, see Aplt. Br. at 27-28 ("Even assuming that possession of drugs (rather than drug trafficking) is severe enough a crime to otherwise justify a warrantless entry, there were no specific facts to show destruction of the evidence of this crime was immanent [sic] and likely."), despite the government's assertion that possession of methamphetamine is a fourth degree felony under New Mexico law, carrying a "basic" sentence of eighteen months, Appllee. Br. at 17-18.

Second, the likelihood that the evidence would be destroyed created sufficient exigent circumstances for Officer Wadley to enter the apartment. See Carter, 360 F.3d at 1241 ("When officers have reason to believe that criminal evidence may be destroyed, . . . or removed, . . . before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought.") (citations omitted). Famiglietta disagrees, contending that exigent circumstances did not support Officer Wadley's decision to immediately enter the apartment after Robertson complied with his request to see what was inside her hand. Famiglietta argues that Officer Wadley's entry into the apartment without a warrant or consent was unnecessary. He suggests alternative courses of action Officer Wadley could have taken to preserve the evidence, such as asking Robertson to hand over the bag, to step outside, or for permission to come inside. He also submits that the record lacks specific facts showing the destruction of the bag was imminent, again emphasizing that Robertson cooperated with Officer Wadley and did not try to move away.

We are guided by the realities of the situation presented by the record, evaluating the circumstances as they would have appeared to prudent, cautious, and trained officers. United States v. Wicks, 995 F.2d 964, 970 (10th Cir. 1993). When asked why he entered the apartment, Officer Wadley stated at the

suppression hearing: "I believe, if I didn't get in there immediately to retrieve the bag, [Robertson] was either going to destroy it or conceal it to where I couldn't locate it." Vol. V. at 120. We conclude that Officer Wadley's belief that Robertson would try to hide or dispose of the evidence was justified under the circumstances. Before entering the apartment, Officer Wadley observed Robertson trying to find a place to conceal the methamphetamine. Moreover, given the reality that a small bag of drugs could be quickly and easily destroyed, Officer Wadley had a reasonable expectation that the evidence would be lost if he first tried to obtain a warrant. Although Officer Wadley arguably had other alternatives to immediately entering the apartment, his choice did not violate the Fourth Amendment. Detective Campbell's decision to follow Officer Wadley inside the apartment, out of concern for Officer Wadley's safety, was also appropriate.

Finally, we address Famiglietta's contention that our decision to uphold the officers' conduct will lead to police abuse and manipulation in the future. In particular, Famiglietta argues that a ruling against him "could encourage precipitous police intrusions into homes whenever officers, in the midst of an unfolding situation, catch a glimpse [of] something that, in their hurried judgment, might be evidence of a crime." Aplt. Br. at 30-31. We are not persuaded. As the government points out, when Detective Campbell and Officer

Wadley arrived at the apartment and the door opened, they had no idea that Robertson would be holding a controlled substance.[4] The actions taken by the officers were prompted by the unexpected conduct that unfolded before them. AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[4] On a related note, Famiglietta stresses throughout his brief that Detective Campbell failed to corroborate the confidential informant's tip and even acknowledged that he lacked probable cause for a search warrant prior to his arrival for the "knock and talk." Whether Detective Campbell and Officer Wadley had probable cause to obtain a search warrant prior to arriving at the apartment for a "knock and talk" is irrelevant. The "knock and talk" strategy utilized by the officers in this case has been described as a "reasonable investigative tool" for purposes of "seeking to gain an occupant's consent to search." United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001). Thus, the fact that the officers arrived at the apartment without a search warrant is not constitutionally problematic. Detective Campbell testified that the purpose of the "knock and talk" was to see if he could identify someone at the apartment named Marc and talk with him about what was going on at the apartment. Famiglietta does not suggest that this stated purpose was false.