**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SCOTT FISHBEIN, by and through his mother and next friend, Shelley Fishbein; AARON HUGHES, by and through his father and next friend, Cliff Hughes; SHELLEY FISHBEIN; MARK FISHBEIN,

        Plaintiffs - Appellees,

v.

CITY OF GLENWOOD SPRINGS, COLORADO; TERRY WILSON, individually and in his official capacity as Glenwood Springs Police Chief; BILL KIMMINAU, individually and in his official capacity as Glenwood Springs Police Lieutenant; CHRISTOPHER M. DANIELSON; NEIL WAGSTROM, individually and in his official capacity as Glenwood Springs Police Officer; AARON MUNCH,

        Defendants,

    and

BRYAN KEITER, individually and in his official capacity as Glenwood Springs Police Officer; MATTHEW HAGBERRY, individually and in his official capacity as Glenwood Springs Police Officer,

No. 05-1013

Defendants - Appellants.

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO (D.C. NO. 03-CV-1083-JLK-GJR)

J. Andrew Nathan and Bernard Woessner of Nathan, Bremer, Dumm & Myers, P.C., Denver, Colorado, for Defendants-Appellants City of Glenwood Springs, Colorado.

Theodore G. Hess of The Law Firm of Ted Hess, P.C., Glenwood Springs, Colorado, for Plaintiffs-Appellees, Scott and Shelley Fishbein.

Before **BRISCOE**, **McCONNELL**, and **SILER**,[*] Circuit Judges.

**McCONNELL**, Circuit Judge.

Glenwood Springs, Colorado, police officers claim their warrantless intrusion into the home of Mark and Shelley Fishbein was necessary to protect officers' safety. Mr. and Mrs. Fishbein claim the search violated the Fourth Amendment. While officers may not perform so-called protective sweeps simply as a matter of course, we conclude here that the defendant police officers reasonably believed they faced an imminent threat to their safety sufficient to justify their incursion. We **REVERSE** the judgment of the district court.

---

[*]The Honorable Eugene E. Siler, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

# I. Background

Shortly after noon on August 15, 2002, Dr. Mark and Shelley Fishbein returned their son Scott, 15, and his friend Aaron Hughes, 16, to the Fishbeins' home in Glenwood Springs, Colorado. The four of them had been out that morning for a visit to a nearby skate park. Having deposited the teenagers, Mark and Shelley retrieved two pistols from the house and set off again for Shelley Fishbein's tattoo shop in downtown Glenwood Springs.

Sometime later that afternoon, a 911 caller told the Glenwood Springs Police Department he had been threatened with a weapon by a couple police believed matched the description of Dr. and Mrs. Fishbein. Five officers responded to the subsequent dispatch, including Defendants Bryan Keiter and Matthew Hagberry. Officers Keiter and Hagberry and a third policeman located the Fishbeins outside their residence at just after 6:00 p.m., loitering next to their car parked across the street from the home. None of the three officers could discern whether either Dr. or Mrs. Fishbein was armed, though Officer Hagberry saw Dr. Fishbein repeatedly adjusting the waist area of his trousers, as if toying with a weapon. No officer attempted to make contact with the Fishbeins, opting instead to wait for backup.

Two additional officers arrived ten or fifteen minutes later, at just the time Dr. and Mrs. Fishbein left their car, crossed the street, and began to walk towards the house. To prevent the Fishbeins from entering their home, the five officers

approached the couple on foot, weapons brandished. Four of the officers carried pistols, the other an AR-15 assault rifle. As Dr. and Mrs. Fishbein reached the lawn, the officers ordered them to get down on the ground. Dr. Fishbein immediately complied, but Mrs. Fishbein hesitated and then continued towards the front door. After repeated orders from the officers, Mrs. Fishbein eventually positioned herself face down on the lawn as directed, and she and her husband were handcuffed and placed under arrest.

One of the officers asked Mrs. Fishbein if there was anyone presently in the house. She replied, "My children are in the house, don't go inside." Appellants' App. at 395. Officer Keiter knew independently that the Fishbeins had at least one teenaged son. And Officer Hagberry, who had been to the Fishbein residence sixteen months before and observed there a sizable cache of weapons—multiple rifles, an AK-47, and two handguns—knew the Fishbeins kept firearms in the house as well, or had at one time. Officers Keiter and Hagberry entered the home together to conduct a protective sweep. As Mrs. Fishbein predicted, they found Scott Fishbein and Aaron Hughes inside, and escorted them to the front lawn. The officers then returned to the house and searched room to room, yelling "clear" as they went. Estimates regarding how long the officers were in the home range from thirty seconds to slightly less than five minutes. The officers did not remove any items from the residence.

Mark, Shelley, and Scott Fishbein, and Aaron Hughes and his father, Cliff, brought this action under 42 U.S.C. § 1983, claiming multiple violations of their Fourth Amendment rights. The Fishbeins' initial complaint named as defendants seven officers—the five who were present at the arrest and two supervising officers—and the City of Glenwood Springs. Following discovery and on the defendants' motion for summary judgment, the district court accepted the recommendation of the magistrate judge and dismissed all claims but the alleged unconstitutional entry into the Fishbeins' home. As to that claim, the district court rejected the defendant officers' assertion of qualified immunity and ordered the case to proceed to trial. Officers Keiter and Hagberry filed an interlocutory appeal from the district court's denial of their motion for qualified immunity.

## II. Jurisdiction

"Orders denying qualified immunity before trial are appealable only to the extent they resolve abstract issues of law." *Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 313, (1996)). An interlocutory appeal is improper when the question is the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact. *Id.* (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). Neither party to this case challenges our jurisdiction to review the interlocutory order of the district court denying qualified immunity, and both parties agree there are no disputed issues of material fact. The Fishbeins admitted

all material facts Officers Keiter and Hagberry relied upon in their motion for summary judgment. Appellants' App. at 257-61, 392. The district court concluded that based on these undisputed facts, viewed in the light most favorable to the Fishbeins, the defendants lacked "reasonable grounds to believe there was an immediate need to search the house." *Id.* at 419. Given this judgment, our jurisdiction is proper under 28 U.S.C. § 1291.

The Report and Recommendation filed by the magistrate judge contains language that might suggest disputed questions of material fact. *See* Appellant's App. at 396 ("[Q]uestions of fact concerning the reasonableness of the search of the Fishbeins' home are the exclusive province of the jury . . . ."); *id.* at 403 ("If, however, the jury were to decide that the officers had no reasonable concern for their safety . . . defendants Keiter and Hagberry would not be entitled to qualified immunity for their actions."). Elsewhere, however, the magistrate judge declared flatly that "there are no disputed material facts." *Id.* at 392. To the extent that the magistrate judge believed that the reasonableness of a search, based on undisputed facts, is a question for the jury, or that the case hinges on whether the officers, as a subjective matter, entertained reasonable concerns for their own safety, the magistrate judge was mistaken. The sole question for this Court on appeal is whether, based on undisputed facts and drawing all reasonable inferences in favor of the plaintiffs, the officers had an objectively reasonable basis for conducting a protective sweep. If they did not, they are not entitled to

qualified immunity. This is purely a question of law, over which this Court has appellate jurisdiction.

### III. Discussion

Officers Keiter and Hagberry contend they are entitled to qualified immunity for their so-called protective sweep, a claim which, if true, effectively forces summary judgment in their favor. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once executive-branch officers assert a qualified immunity defense, the burden shifts to the plaintiffs to demonstrate that the officers (1) violated a federal right (2) that was clearly established at the time of the incident. *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). Because we conclude the defendants' protective sweep did not violate the Fourth Amendment, we hold the plaintiffs fail their burden.

We begin our analysis by determining whether the officers' protective sweep violated the Fishbeins' Fourth Amendment right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. A protective sweep is a cursory, limited search of a residence or other premises for the sole purpose of securing officers' safety during an arrest or investigation. *United States v. Hauk*, 412 F.3d 1179, 1185–86 (10th Cir. 2005). The protective-sweep doctrine represents an exception to the Fourth Amendment's warrant requirement, theoretically akin to the exception for exigent circumstances. *United States v.*

*Wicks*, 995 F.2d 964, 970 (10th Cir. 1993). Police are permitted to search a premises without judicial pre-authorization when they reasonably believe, on the basis of articulable facts, that they face an imminent threat to their personal safety or that the safety of third parties is imminently threatened. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Further, the search must not be motivated by an intent to arrest or seize evidence. *Id.* at 326 ("Such a protective sweep is not a full search of the premises, but may extend only to a cursory inspection of spaces where a person may be found."); *see Roska v. Peterson*, 328 F.3d 1230, 1240 (10th Cir. 2003) (holding that a search motivated by exigent circumstances is lawful only when not motivated by intent to arrest or seize evidence).

In our case, the second of these factors is more easily addressed and we dispose of it first. While the Fishbeins maintain that there is "considerable doubt" as to whether the sweep of their home was narrowly tailored to the preservation of officer safety, there is in fact little evidence to suggest the officers' sweep was meant for anything other than police protection. Neither Officer Keiter nor Officer Hagberry removed any items from the house. No person within the house was arrested. The Fishbeins' argument is based entirely on Plaintiff Aaron Hughes's estimate that it took the officers "a little less than five minutes maybe" to complete their sweep. Appellants' App. at 205.[1]   The

_____

[1]Scott Fishbein estimated that the officers' sweep took no longer than thirty seconds. Appellants' App. at 200. The two estimates are reconcilable if Aaron

(continued...)

-8-

Fishbeins urge this Court to surmise that the officers were gathering evidence during this time, behavior outside the bounds of a protective search. *Buie,* 494 U.S. at 326. Such a conclusion, however, would be unsupported speculation. We do not think five minutes is a self-evidently excessive time for police to conduct a limited protective sweep to ensure that there are no armed and dangerous persons lurking on the premises. *Buie* counsels that the sweep should be "no longer than is necessary to dispel the reasonable suspicion of danger." 494 U.S. at 335-36. But given the cluttered interior of the Fishbein home, the time spent removing the two teenagers, the officers' concerns regarding the cache of weapons, and the fact that Officers Keiter and Hagberry neither removed evidence from the house nor made arrests while inside, we have little trouble in concluding that their sweep was legitimately aimed at securing officers' safety.

The major focus of our inquiry is the reasonableness of the officers' belief they were in imminent danger. Protective sweeps are not justified as a matter of course. *United States v. Carter*, 360 F.3d 1235, 1242-43 (10th Cir. 2004); *accord Hauk*, 412 F.3d at 1186. Officers must articulate specific facts, "which, taken together with the rational inferences from those facts, would warrant a reasonably

---

[1](...continued)
was referring to the entire time the officers were involved in sweeping the house, including their initial encounter with the teenagers and escorting them outside, while Scott was referring to the subsequent sweep after he and Aaron had been taken outside. Interpreting the facts in the light most favorable to the party opposing summary judgment, we assume that Aaron's estimate is correct.

prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.

In the instant case, Officers Keiter and Hagberry articulate two specific facts which they contend justify their belief that the Fishbein home harbored an individual dangerous to police safety: Officers knew that the Fishbeins had at least one teenaged son and that firearms had recently been present inside the home. We agree that a prudent officer might reasonably infer from this knowledge that a teenager could be located inside the home, could be armed, and having just observed his parents' arrest, could be hostile to the arresting officers.

This result accords with our precedents, which recognize that unaccounted-for third parties with access to firearms may present a grave danger to arresting officers. In *United States v. Soria*, 959 F.2d 855, 857 (10th Cir. 1992), we held that a protective sweep of the defendant's auto shop was proper following the defendant's arrest during a drug transaction close to the shop where officers believed accomplices may have been hiding. In *United States v. Mabry*, 809 F.2d 671, 679 (10th Cir. 1987), we found no constitutional problem with a protective sweep of a suspected drug dealer's home, partly on the basis that hostile parties might have been inside. More recently, we upheld FBI agents' protective search in *Hauk*, when agents pointed to evidence suggesting the presence of a third party in the residence who might have had reason to assist the defendant in resisting arrest. 412 F.3d at 1191.

In the foregoing cases, police relied on various bits of circumstantial evidence to inform their judgment that a hostile third party might be present. The law enforcement agents in *Hauk*, for instance, inferred from the presence of a parked car in the defendant's driveway that a hostile third-party might be inside the residence. *Id.* at 1192. In the case at bar, the evidence suggesting danger is much stronger. Mrs. Fishbein flatly told Officers Keiter and Hagberry that there were "children" present in the home, and at least one of the officers knew Mrs. Fishbein's "children" included a teenaged male. Admittedly, as the plaintiffs point out, we have held that the mere presence of children in the home is not sufficient, without more, to justify a protective sweep. *United States v. Hogan*, 38 F.3d 1148, 1150 (10th Cir. 1994). But the child at issue in *Hogan* was not a teenager and police in that case never alleged the child posed a threat to officer safety. Rather, police apparently claimed they needed to search the house in order to protect the child. *Id.*

The situation here is altogether different, more analogous to cases where an accomplice is lurking on the premises. Scott Fishbein was certainly old enough to know how to fire a weapon and officers knew from previous personal observation that weapons had been available in the Fishbein household. Mrs. Fishbein affirmatively told officers her "children" were inside. It is eminently reasonable to infer from these specific and articulable facts that Scott Fishbein was likely present in the home at the time of the incident, that he had access to firearms, and

-11-

that he had reason to be upset or alarmed or otherwise hostile to officers following his parents' dramatic arrest on the front lawn. *See United States v. Wilson*, 306 F.3d 231, 238-39 (5th Cir. 2002) (holding a protective sweep justified based on the presence of a child in the home with access to firearms and potentially hostile to police after the arrest of his parents), *overruled on other grounds by United States v. Gould*, 364 F.3d 578, 586 (5th Cir. 2004).

The plaintiffs rely heavily on our decision in *United States v. Carter* to argue that because the Glenwood Springs officers had no certain knowledge that Scott Fishbein was present in the house, their sweep violated the Fourth Amendment. *Carter*, however, does not compel that conclusion. In *Carter*, we refused to countenance a protective sweep where officers had *no* reason to believe there was any hostile person—or any person at all—inside the house. 360 F.3d at 1242. Officers Keiter and Hagberry, by contrast, had very good reasons to suspect the presence of a hostile third party, not the least of which was Mrs. Fishbein's affirmative statement that her children were indeed inside. In keeping with *Buie*, *Carter* requires officers to have some articulable basis for their suspicion of danger—not certain knowledge. *Id.*

We conclude that the defendant police officers had reasonable grounds to believe there was an immediate threat to their safety. And we conclude they were not motivated by an intent to arrest or seize evidence. *Hogan*, 38 F.3d at 1150. The circumstances considered in their totality were sufficient to justify a

protective sweep of the Fishbeins' home and accordingly, we find no violation of the Fishbeins' or the Hugheses' Fourth Amendment rights. *Hauk*, 412 F.3d at 1187. If there has been no violation of a federal right, the plaintiffs cannot defeat the defendant officers' assertion of qualified immunity. The plaintiffs fail at the first step. *Greene*, 174 F.3d at 1142. We find no need to proceed further. Officers Keiter and Hagberry are entitled to qualified immunity and to summary judgment in their favor.

## IV. Conclusion

We **REVERSE** the district court's denial of qualified immunity and REMAND with instructions to enter summary judgment in favor of the defendants.